## LAZARUS et al. v. NEW YORK CENT. R. R.

(District Court, S. D. New York. February 4, 1921. On Rehearing, March 29, 1921.)

1. **Carriers &36—Liability to shipper for loss governed by uniform bill of lading.**

   Where a railroad carrier receives an interstate shipment without issuing any bill of lading or making a contract with the shipper its liability is governed by the terms of a uniform bill of lading published and filed with the Interstate Commerce Commission.

2. **Carriers &160—Period of federal control excluded in determining limitations; "periods of limitation."**

   Transportation Act Feb. 28, 1920, § 206f, providing that "the period of federal control shall not be computed as a part of the periods of limitation in actions against carriers * * * for causes of action arising prior to federal control," *held* to apply to an action by a shipper for loss of goods, where the limitation was fixed, not by contract between the parties, but in the absence of such contract by the terms of the uniform bill of lading published and filed by the carrier with its schedules, although the period of limitation had expired and action had been commenced before the passage of the act.

3. **Constitutional law &171—Statute removing bar of limitations constitutional.**

   Transportation Act Feb. 28, 1920, § 206f, providing that "the period of federal control shall not be computed as a part of the periods of limitation in actions against carriers * * * for causes of action arising prior to federal control," *held* constitutional as applied to a cause of action by a shipper against the carrier as to which the period of limitation had expired before passage of the act, where such limitation was not fixed by contract, but by the carrier in its published and filed schedules as permitted by Interstate Commerce Act, § 20, as amended (Comp. St. § 8604a).

At Law. Action by Samuel O. Lazarus and others against the New York Central Railroad. On motion by plaintiff for directed verdict. Motion granted.

This is an action at law brought against the final carrier for the loss of parts of two shipments of tin, laden at Singapore and consigned to the British consul at New York, "Notify Lewis Lazarus & Sons" (the plaintiffs). The shipment was made on the 12th day of May, 1917, on the steamship Luise Nielsen at Singapore, and reached Seattle, the port of delivery, on June 16, 1917. Two through bills of lading were issued by the ship's agents at Singapore, which contained no exceptions or conditions relevant to this controversy ex-

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cept the following: "A delivery from the ship's tackles at the anchorage from the port of transhipment of the goods and merchandise in this bill of lading according to the terms thereof to the connecting line to be carried subject to the terms and conditions of its bill of lading shall absolve the steamship company of all claims of whatever description." Upon delivery of the tin to the rail carrier at Seattle no bill of lading was issued at that place. Eventually the intermediate rail carriers delivered the tin to the defendant for transport to New York and the defendant also gave no bill of lading. The two shipments reached New York on August 13 and 17, 1917, and within a day or two thereafter a shortage was discovered in each shipment, presumably due to some theft in the New York freight yards, although no proof appears.

The defendant, in accordance with the Interstate Commerce Act (Comp. St. § 8563 et seq.), before receiving the shipment, had published and filed a uniform bill of lading with the Interstate Commerce Commission, one of the provisions of which was as follows: "Suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed." After the discovery of the shortages the parties negotiated over a long period of time as to liability, and the plaintiffs commenced no action until the 29th day of September, 1919, more than two years and one day after the loss had been discovered.

The rate at which the tin was carried corresponded with the rate provided in the Transcontinental Freight Bureau east-bound import tariffs. These tariffs and classifications had been published and filed by the defendant with the Interstate Commerce Commission and were in effect at the time. By paying a higher rate, the shippers could have freed themselves from the terms and conditions of the uniform bill of lading. They are not, however, shown to have had notice of the conditions in the uniform bill of lading or of the option to be free from the same by paying a higher rate.

Three points were raised: First, whether, in the absence of any contract between the carrier and the shipper the conditions of the uniform bill of lading applied at all; second, whether, if they did, section 206 (f) of the Transportation Act of February 28, 1920, c. 91, 41 Stat. 462, extended the period of limitation contained in the clause quoted from the uniform bill of lading; third, whether two years and one day after a reasonable time for delivery had in fact elapsed before September 29, 1919.

The plaintiff also raised the question of an estoppel to assert the defense, arising from the negotiations between the parties before the suit was brought.

Laurence A. Sullivan, of New York City, for plaintiff.
William Mann, of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above). I find it necessary to decide only two out of the three questions raised in this case: (a) May the carrier take advantage of the provisions of its bill of lading, as filed, without showing that the shipper had accepted it, or even that the carrier had issued any bill at all? (b) Does section 206 (f) of the Federal Transportation Act extend the time, fixed by the bill of lading as filed, within which action may be brought?

[1] Before the Cummins Amendment (Comp. St. §§ 8592, 8604a) it was settled that, when the carrier published and filed its regulations and schedules in accordance with section 1, subdivision 4, of the Interstate Commerce Act (Comp. St. § 8563), and conformed with the pertinent regulations of the Interstate Commerce Commission, it was not necessary to incorporate a limitation of liability into a passenger ticket or to prove any contract with the passenger, in order

to take advantage of the limitation of liability contained in the schedules. Boston & Maine R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593. And it was also settled that it was not necessary to issue any bill of lading at all in the case of goods. Atchison, etc., Ry. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901. In the second case it is true that a bill of lading was issued containing the limitation relied upon, but that was after the shipment (a horse) had started on its way, and the case was treated as depending only upon the original oral contract of carriage. While all limitation of liability has since been made illegal by the Cummins Amendment, that does not affect the applicability of the doctrine there established in respect of such limitations as still remain open to the carrier, of which the period within which suits may be brought is one. Regardless of the terms of the receipt or bill of lading delivered, and regardless even of the fact that none at all is given, the regulations governing the relations of the shipper and the carrier are to be found in the schedules published and filed with the Interstate Commerce Commission, subject to its approval or disapproval within the jurisdiction given it by statute. Therefore, when the defendant received the tin at Chicago or Buffalo, it was not necessary to go through the empty form of issuing a new bill of lading, which indeed it would not have delivered to any one, if it had, nor was the equally futile formality necessary at Seattle when the first domestic carrier received it from the ship.

[2] The next question is open on authority and must be settled on principle. It turns upon the effect to be given to section 206 (f) of the Transportation Act of 1920, which went into effect more than two years after the loss occurred and some months after the action had been commenced. It is divisible into two parts: First, whether the section covers this case in its meaning; second, whether it is valid, when applied to defenses already completed, established by the lapse of time. The section is as follows:

Sec. 206: "(f). The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers * * * for causes of action arising prior to federal control."

The defendant argues that the phrase "periods of limitation" must refer only to limitation by statute, and cannot include a limitation such as this derived from the bill of lading filed with the Commission. In corroboration of that construction it appeals to section 206 (a), which reads in part as follows:

"Such actions [actions arising out of federal control], suits, or proceedings may, within the periods of limitation now prescribed by state or federal statutes, but not later than two years from the date of the passage of this act, be brought," etc.

There is good reason for interpreting the phrase "periods of limitation" in the same way in each subsection, and I accept the defendant's argument pro tanto. But I believe that, at least in the absence of a

contract with the shipper, the period fixed by the bill of lading is a "period of limitation prescribed by * * * federal statutes." Section 20 of the Interstate Commerce Act (Comp. St. § 8604a) forbids a carrier by "rule, contract, regulation or otherwise" to make a limitation of less than two years, and in so doing it may truly be said to prescribe that period as a minimum. It is true that it gives the carrier the right to establish a longer period, if it chooses, which it has not here chosen to do, except to the extent of one day, and it may be where there is a valid contract between the carrier and the shipper for a period longer, even by so short a time as one day, that it would be improper to speak of the limitation as "prescribed by" the statute. However, in the case at bar there was no such contract, as the defendant concedes, and to avail itself of any limitation whatever it must resort to the statute, section 1, subdivision 4, which gives binding effect to its schedules when published and filed, as required by the Commission.

Assuming, then, that section 20 does not "prescribe" the period, because of the addition of one day, yet it remains true that it is not by contract, but by legislative permission, that any period at all is fixed, and the issue turns upon the merely verbal question whether though in substance fixed by the right granted the carrier by statute, the period is "prescribed by * * * federal statutes." I think that the language should be referred rather to the substance of the situation than to its form. The clause was apt to cover all those limitations which got force from positive law rather than from contract, and if the defendant relies upon the statute to limit the period, it must not blow hot and cold, by denying the application of all relevant amendments. To be sure, section 206 (a) might have read "periods of limitation, prescribed or derived from state or federal statutes"; but that would have been a blind and clumsy phrase, and there can, I believe, be little doubt that the intent went to all limitations forced upon the shipper without his consent. Furthermore, the Transportation Act went into effect February 28, 1920, more than two years after the President had seized the railroads. Actions for personal injuries not infrequently have a period of limitation of only three years or less, and actions on contracts of carriage are generally limited to two years under section twenty. Unless section 206 (f) has the effect of extending the period of limitations already expired, it will have a very small operation at all, and will probably fail to include the great majority of those cases which were pending on December 28, 1917. It seems to me, therefore, judged merely as matter of intent, that section 206 (f) tolled the limitation.

[3] The remaining question is of the constitutionality of the section so construed. If the defendant depended upon a contract between itself and the shipper, I should have great doubts of the validity of such a statute, but as I have already said, it does not. The question is merely whether, when the period has been completed within which by force of statute the shipper may begin suit, a second statute may restore that remedy which the first took away. Upon that question it

seems to me that Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, is conclusive, and I need discuss it no further. The case does not involve the acquisition of property rights by prescription, but of taking away and later restoring a remedy for a chose in action. Whatever the theoretical basis for any such distinction, it is too well settled to be open now to any question.

Verdict directed for the plaintiff on both causes of action.

## On Rehearing.

If the tin had a market value, or a value which could be ascertained by any "recognized standard," Demotte v. Whybrow, 263 Fed. 366, rules this case. I recall no evidence on that point, but I shall assume that this was the fact, unless the defendant disputes it and wishes to insist upon the production of proof by the plaintiff. In such case, if the defendant will move for a new trial on that issue within 10 days, I will grant it, and the plaintiff must produce evidence. Otherwise, the verdict will be directed for interest, as well as principal, from the date of the loss; i. e., the arrival of the cars in New York.