HERCULES POWDER CO. *vs.* THE PENNSYLVANIA RAILROAD CO.

1. CARRIERS—LIMITATION IN BILL OF LADING HELD NOT IN VIOLATION OF STATUTES.

    A bill of lading issued November 16, 1917, and requiring suits for loss, damage, or delay to be brought within two years and one day, did not violate Cummins Act March 4, 1915, making it unlawful to prescribe a shorter period than two years, the Carmack Amendment (*U. S. Comp. St.* §§ 8604a, 8604aa) which did not prescribe any period of limitation, but merely required the issuance of a receipt or bill of lading and declared its effect, or any other federal statute.

2. CARRIERS—WHERE LIMITATION IS PART OF CONTRACT OF SHIPMENT, a SUBSEQUENT STATUTE AFFECTING SUCH LIMITATION IS NOT APPLICABLE.

    Where the limitation of time to sue is embodied in a contract, such as a bill of lading issued in conformity with the Cummins Act, stating the time after delivery within which suits must be brought against a carrier, a subsequent statute, such as Transportation Act Feb. 28, 1920, tit. 2, § 206f, providing that the two-year period shall be computed from the date carrier disallows claim, and that the period of federal control shall be excluded, does not apply.

3. APPEAL AND ERROR—APPELLATE COURT WILL ASSUME GOODS WERE DELIVERABLE WITHIN REASONABLE TIME AFTER RECEIPT BY CARRIER, IN ABSENCE OF AGREEMENT AS TO WHEN THEY WERE DELIVERABLE.

    In the absence of an agreement between a shipper and a carrier as to when the goods were to be delivered, the appellate court will assume that the time of delivery was a reasonable time after the goods were received by the carrier.

4. CARRIERS—CARRIER NOT RELIEVED OF LIABILITY FOR LOSS OR DAMAGE MERELY BECAUSE SHIPPER FURNISHED DEFECTIVE CAR.

A carrier is not relieved of liability for loss or damage to goods caused by a defective car merely because the shipper furnished that car, if the loss could have been prevented by reasonable diligence of the carrier in inspecting the car, unless the shipper released the carrier from liability.

(*July*, 1922.)

PENNEWILL, C. J., RICE and HARRINGTON, J. J., sitting.

*James I. Boyce* for plaintiff.

*Herbert H. Ward, Jr.*, (of Ward, Gray & Neary) for defendant.

Superior Court for New Castle County, November Term, 1921.

Demurrer, No. 19, January Term, 1921.

The facts appear in the opinion of the Court.

Brief of Attorneys for Plaintiff on Demurrer.

The terms and conditions of the bill of lading, as set out in the fourth plea, became inoperative during the period of federal control.

The common-law liability of carriers for loss of or injury to goods and the reasons for such rule stated. 10 *C. J.* 107 *et seq.*, and cases cited.

Prior to the passage of the Carmack Amendment to the *Hepburn Act* (34 *Stat.* 595, 4 *Fed. Stat. Ann.* 506 [*U. S. Comp. St.* §§ 8604a, 8604aa]), the common-law rule, with regard to liability for loss and damage to property on interstate, as well as intrastate shipments, was subject to state regulation.

Congress by this act provided, among other things, that the carrier must issue to the shipper a receipt or bill of lading; that it should be liable to the lawful holder thereof for any loss, damage or injury to property caused not only by the issuing carrier but by any connecting carrier; and that no contract, receipt, rule or regulation should exempt such common carrier from the liability thus imposed.

After the Carmack Amendment, all state laws and regulations and rulings of state courts became null and void and were superseded by the federal regulations with respect to all shipments from one state to another. 2 *Robert's Fed. Carriers*, § 27, and cases cited.

In the further exercise of federal control, Congress, also, established by the Cummins Amendment of March 4, 1915, a minimum period of limitations for giving notice of claims, for filing claims and for bringing suits. It provided:

"That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years." 24 *Stat.* 386, as amended by 34 *Stat.* 595, and 38 *Stat.* 1196, 4 *Fed. Stat. Ann.* (2d Ed.) 507 (*U. S. Comp. St.* § 8604a).

(a) Facts of which the court will take judicial notice.

The declaration alleges that the goods were shipped from Johnstown, Pa., on November 16, 1917, and the plea alleges that a part of them arrived at Hercules, Cal., on February 4, 1918.

The court will take judicial notice of the fact that while these goods were in transit the President's Proclamation of December 26, 1917, taking over the railroads, under the authority of the Army Appropriation Act of August 29, 1916 (39 *Stat.* 622), was issued.

On March 21, 1918, Congress passed an act, providing for the operation of railroads while under federal control. *Fed. Stat. Ann.* 1918 *Supp.* 757 (*U. S. Comp. St.* §§ 3115¾—3115¾p.)

Federal control of the railroads did not terminate until March 1, 1920. *Transportation Act* 1920, 41 *Stat.* 456, *Fed. Stat. Ann.* 1920, 72.

Therefore, for more than two years after a part of the goods in question arrived at Hercules, Cal., the plaintiff could reach the defendant only through the medium of federal agents. *Mardis v. Hines* (*D. C.*), 258 *Fed.* 945; *No. Pac. Ry. Co. v. No. Dakota*, 250 *U. S.* 135, 39 *S. Ct.* 502, 63 *L. Ed.* 897.

With this situation in mind, Congress when returning the railroads to their owners provided:

"The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the commission for causes of action arising prior to federal control." *Transportation Act.* 1920, 41 *Stat.* 462, *Fed. Stat. Ann.* 1920 Supp. 79.

That this provision refers to periods of limitation, contained in uniform bills of lading under the Cummins Amendment to the Carmack Amendment to the Hepburn Act, is obvious:

First. Because the periods of limitation set forth in such bills of lading are the only periods of limitation applicable to interstate shipments; and

Second. Because the provisions would have little, if any, operation if it did not apply to cases such as the one at bar. *Lazarus v. N. Y. Central R. R. Co. (D. C.)*, 271 *Fed.* 93.

(b) The terms and conditions of the bill of lading, as alleged in the fourth and sixth pleas, are unlawful and wholly void.

Assuming for the sake of argument that the Transportation Act of 1920 does not extend the period of limitation provided for in the Cummins Amendment, it is, nevertheless, submitted that this amendment has been erroneously construed by the carrier.

This act does not provide from what date the periods of limitation therein provided are to be computed.

The carrier construing the Cummins Amendment provided in the bill of lading that:

"Suits of loss, damage or delay shall be instituted only within two years and one day after delivery of the property or in case of failure to make delivery then within two years and one day after a' reasonable time for delivery has elapsed."

That this construction of the Cummins Amendment was erroneous has not been declared by Congress, which by subsequent amendment added the following paragraph:

"Such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice." 41 *Stat.* 494, *Fed. Stat. Ann.* 1920 *Supp.* 119.

A legislative body may by statute declare the construction of previous statutes and may, in many cases, thus furnish the rule to govern the courts in transactions which are past, provided no constitutional right of the party concerned is violated. 25 *R. C L.* 1047, 1049.

32 Del.]     Hercules Powder Co. vs. P. R. R. Co.     313

Statement.

In the present case Congress by subsequent legislation, without interfering with any constitutional or vested rights of the carrier, and without changing the period of limitation which may be prescribed by it, has defined its own terms and construed its own act.

The limitation of an action is a matter of remedy, and not of right, and an extension of the remedy does not affect a vested right. *Terry v. Anderson*, 95 *U. S.* 628, 24 *L. Ed.* 365; *Lewis' Southerland, Stat. Con.* (2d *Ed.*) § 668; 36 *Cyc.* 1142.

The fourth and sixth pleas are, therefore, bad, because the carrier has failed to allege that the suit was not brought within two years after notice in writing was given by the carrier to the claimant that the carrier had disallowed the claim.

(c) The fifth plea attempts to set up a defense which is contrary to the express provisions of the Cummins Amendment.

This amendment, as finally amended by Act of August 9, 1915 (39 *Stat.* 441, *Fed. Stat. Ann.* 1918 *Supp.* 387 [*U. S. Comp. St.* §§ 8592, 8604a]), establishes the old absolute common-law liability of a common carrier, and does not permit the carrier to plead any limitation on its liability, except as to value, in matters of baggage and other property where rates dependable upon the declared value are authorized, or required by order of the Interstate Commerce Commission. *Cin., N. O. & T. P. R. Co. v. Rankin*, 241 *U. S.* 319, 36 *Sup. Ct.* 555, 60 *L. Ed.* 1022, *L. R. A.* 1917A, 265; *Adams Express Co. v. Croninger*, 226 *U. S.* 491, 33 *Sup. Ct.* 148, 57 *L. Ed.* 314, 44 *L. R. A.* (*N. S.*) 257.

The matters alleged in the fifth plea, therefore, do not come within any exception of the absolute liability of the carrier.

Even if the carrier might be relieved of its liability under proper contract, it nowhere appears in the fifth plea that the consignor of said goods undertook to furnish and did furnish the car used for the transportation of said goods for a sufficient consideration. The common-law rule stated. *Hutchinson on Carriers* (3d *Ed.*) § 508 (497, 498); *Moore on. Carriers*, § 115; 10 *C. J.* 87; *Seaboard Air Line R. Co. v. McRae*, 14 *Ga. App.* 94, 80 *S. E.* 211

*Ogdensburg, etc., R. Co. v. Pratt,* 89 *U. S.* (22 *Wall.*) 123, 22 *L. Ed.* 827.

Even if the carrier by proper contract might be relieved of its liability, it nowhere appears in the fifth plea that the alleged defects were such that an ordinary inspection by the consignor would bring them to its attention, or that the consignor knew of the defective condition of the said car at the time the goods were loaded, or that the consignor in any way released the said defendant from liability for injuries resulting from the said defective vehicle. *L. & N. R. R. Co. v. Carr,* 77 *Fla.* 469, 5 *A. L. R.* 102, 81 *South.* 779, is exactly in point. *Hutchinson on Carriers* (3d *Ed.*) § 508 (501, 502); 10 *C. J.* 87; *L. &. N. R. R. Co. v. Dies,* 91 *Tenn.* 177, 18 *S. W.* 266, 30 *Am. St. Rep.* 871; *Forrester v. Southern R. Co.,* 147 *N. C.* 553, 61 *S. E.* 524, 18 *L. R. A.* (*N. S.*) 508, 15 *Ann. Cas.* 143; *Pierce Co. v. Wells F. & Co.,* 236 *U. S.* 278, 35 *Sup. Ct.* 351, 59 *L. Ed.* 576; *Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co.,* 228 *U. S.* 177, 33 *Sup. Ct.* 474, 57 *L. Ed.* 787; *Adams Express Co. v. Croninger,* 226 *U. S.* 491, 33 *Sup. Ct.* 148, 57 *L. Ed.* 314, 44 *L. R. A.* (*N. S.*) 257; *Atlantic Coast Line R. Co. v. Coachman,* 59 *Fla.* 130, 52 *South.* 377, 20 *Ann. Cas.* 1047; *Summerlin v. Seaboard Air Line R. Co.,* 56 *Fla.* 687, 47 *South.* 557, 19 *L. R. A.* (*N.S.*) 191, 131 *Am. St. Rep.* 164; 10 *C. J.* 154, 155; 4 *R. C. L.* 767. See, also, *Cin., etc., Co. v. Fairbanks & Co.,* 90 *Fed.* 467, 33 *C. C. A.* 611.

Defendant's Brief in Support of Pleas.

1. The bill of lading set out in the plea was drawn pursuant to the Cummins Amendment of 1915. Prior to the passing of this amendment the Carmack Amendment of 1906 was in force. It, in substance, provided that bills of lading should be issued for property received for transportation by a common carrier from one state to another, and that the receiving carrier should be liable for any loss of or damage to such goods, whether occurring on its own line or on the line of a subsequent or connecting carrier.

It also provided that:

"No contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." *Chapter* 3591, § 7, 34 *Stat.* 595; 11 *C. J.* "*Carriers*," § 172, *note* 39; 3 *United States Ann. Stat.* 299.

This clause of the Carmack Amendment was passed on in *Missouri, Kansas & Texas R. R. v. Harriman*, 227 *U. S.* 657, 33 *Sup. Ct.* 397, 57 *L. Ed.* 690, decided in 1913, and a provision in the contract of shipment that no suit should be brought after the expiration of 90 days from the time when a loss occurred, was held to be reasonable and valid. See, also, *Tex. & Pac. R. R. Co. v. Leatherwood*, 250 *U. S.* 478, 39 *Sup. Ct.* 517, 63 *L. Ed.* 1096.

Both of these cases held that a limitation less than the statutory limitation may be contracted for, provided consideration be given.

The Cummins Amendment, which was substituted for the Carmack Amendment, does not change this proposition of law, but merely states a minimum of two years below which the shipper and the carrier cannot go in contracting for a period of limitation less than the statutory period.

The Cummins Amendment provides:

"That it shall be unlawful for any such common carrier to provide by rule, contract, regulation or otherwise, a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: Provided, however, that if the loss, damage or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim or filing of claim shall be required as a condition precedent to recovery." 38 *Stat. at Large, c.* 176, *p.* 1196; 10 *C. J.* "*Carriers*," § 173; 4 *Fed. Stat. Ann.* (*2d Ed.*) 507.

Neither the Hepburn Act (34 *Stat.* 584) nor the Carmack Amendment thereto contain any such clause, yet the two cases above cited held valid terms in the bill of lading similar to those used in the one involved in this case.

The Cummins Act, therefore, reaffirms the previous rule that the shipper and carrier may contract for a limitation less than the statutory limitation. *Leigh v. Payne* (*D. C.*), 274 *Fed.* 443 (affirmed in Court of Appeals); *Hailey v. Oregon Short Line R. R. Co.* (*D. C.*), 253 *Fed.* 569; *St. Louis Iron Mt. & Southern Ry. Co. v. Starbird*, 243 *U. S.* 592, 37 *Sup. Ct.* 462, 61 *L. Ed.* 917; *Northern Pacific Ry. Co. v. Wall*, 241 *U. S.* 87, 36 *Sup. Ct.* 493, 60 *L. Ed.* 905.

The last two cases involve a construction of the Carmack Amendment.

In conclusion we would state that we base our contention that the terms and conditions of the bill of lading, as set forth in the fourth and sixth pleas, are valid for the following reasons:

(1) Similar provisions were held valid prior to the passing of the Cummins Act.

(2) The purpose of the Cummins Act was to set a minimum period of limitation which could be contracted for by the shipper and the carrier.

(3) The provisions of the Cummins Act have been held reasonable in a United States court which passed upon a provision in a bill of lading similar to the one in our case.

II. The terms and conditions of the bill of lading, as alleged in the fourth and sixth pleas, were not rendered inoperative during the period of federal control. See *Lazarus v. N. Y. Central R. R. (D. C.)*, 271 *Fed.* 93; same case on appeal *(C. C. A.)* 278 *Fed.* 900.

III. The allegations in the fifth plea are sufficient. *Central of Ga. Ry. Co. v. Chicago Varnish Co.*, 169 *Ala.* 287, 53 *South.* 822; *Ala. & Vicksburg R. Co. v. American Cotton Oil Co.*, 249 *Fed.* 308, 161 *C. C. A.* 316; *Ala. Great Southern R. R. Co. v. Morris & Co.*, 249 *Fed.* 312, 161 *C. C. A.* 320.

These cases discuss the rule of law applicable where the shipper "furnishes" the car. None of them hold that a contract was necessary in order to place the liability on the plaintiff; that it makes any difference whether, or not, the shipper inspected the car that he furnished, whether he knew of the defective condition of the car when the goods were loaded, or that it was necessary for the shipper to release the railroad from liability from injuries resulting from a defective car.

All of them hold that where the shipper furnishes the car, whether it belongs to him, or to some one from whom he has leased it, that the carrier is not liable for losses resulting from the defective condition of the car, in the absence of evidence that the defect in loading or the defect in the car was apparent to the owner

Statement.

at the time of its acceptance, and the court seem to doubt whether, even if the carrier knew of the defect in loading or the defect in the car at the time of the acceptance, that fact would render the carrier liable. See, also, 10 *C. J. "Carriers," p.* 87, § 90.

For the law applicable to cases where the shipper selects the car, see 10 C. J. *"Carriers," p.* 87, § 93.

PENNEWILL, C. J., delivering the opinion of the court:

This suit was brought to recover the value of a large quantity of toluol, alleged to have been lost in transit from Johnstown, Pa., to Hercules, Cal.

It is alleged in the declaration that the goods were delivered to the defendant November 16, 1917, at Johnstown, and that the defendant neglected to carry the same safely and securely, and make delivery to the plaintiff at Hercules. The suit was commenced November 16, 1920.

In addition to three general pleas to the declaration the defendant filed three special pleas. The fourth plea, which is the first special plea, alleges that the said shipment was transported in accordance with the conditions of the uniform bill of lading, which provided, inter *alia,* that:

"Suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

This plea further alleged that the tank car in question arrived at its destination on or about February 4, 1918, that this was a reasonable time for delivery, and that suit was not brought within two years and one day after reasonable time for delivery had elapsed.

The defendant's fifth plea, which is his second special plea, alleges that the consignor of said goods undertook to furnish and did furnish the car used for the transportation of the goods mentioned in the declaration, the loss complained of occurring while the goods were being transported in said car, and that the said loss was due to the defective condition of the car at the time goods were loaded, said defective condition being that the car was loaded

without properly draining the heater coils, etc.   The defendant's sixth plea, which is his third special plea, is practically the same as his fourth plea.

To the first and third special pleas the plaintiff demurred both  generally and specially setting out the following grounds:

(1) The terms and conditions of the said bill of lading as alleged in the pleas became inoperative during the period of federal control.

(2)   The terms and conditions of the said bill of lading as alleged in the fourth and sixth pleas are unlawful and wholly void.

These grounds will be considered in their inverse order.

We think the liability of carriers at common law or under state laws prior to the federal statutes on the subject is immaterial to the question presented by the pleadings in this case, and that question will not be discussed or considered.

By the statute known as the Carmack Amendment to the Hepburn Act, Congress provided, among other things, that the carrier must issue to the shipper a receipt or bill of lading; that the carrier should be liable to the lawful holder thereof for any loss, damage or injury to property, caused not only by the issuing carrier but any common carrier, railroad or transportation company to which the property might be delivered; and that no contract, receipt or rule, regulation or other limitation of any character whatsoever should exempt such carrier from the liability thus imposed.

Because of such federal jurisdiction, regulation and control, all state laws became inoperative as to shipment from one state to another, in so far as they were covered by federal legislation.

It is alleged in the declaration that the goods were shipped November 16, 1917, and it is alleged in the plea that a part of the goods arrived at destination on February 4, 1918.   On December 26, 1917, the President issued his proclamation taking over the railroads of the country under authority of the Army Appropriation Act of August 29, 1916, and the Director General of Railroads took over the transcontinental lines, including the defendant.

On March 21, 1918, Congress passed an act to supplement the powers of the President over railroads, and to provide for their operation while under federal control.

Under the Transportation Act of February 28, 1920, federal control ended March 1, 1920. The period, therefore, during which the defendant was under federal control was from December 26, 1917, to March 1, 1920. By said act (title 2, § 206f) it was provided that:

"The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers,    *   *   *   for causes of action arising prior to federal control."

It was also provided by said Transportation Act (*Section* 206a) that:

"Such actions, suits, or proceedings may within the periods of limitation now prescribed by state or federal statutes, but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier."

[1] Such, together with the Cummins Act hereafter mentioned, are the federal statutes applicable to the questions raised by plaintiff's first ground of demurrer. The court are unable to see that the bill of lading issued by the defendant to the plaintiff was illegal under any federal statute. Such bill of lading is claimed by the defendant to be based upon and drawn in conformity with the act known as the Cummins Act, approved March 4, 1915, which provides:

"That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period    *   *   *   for the institution of suits than two years."

This law was passed subsequent to the Carmack Amendment, and we are unable to see how the bill of lading in question can be held illegal and void thereunder. The bill of lading does not provide a limitation shorter than that prescribed by the act, but one day longer, and to that extent it is in favor of the shipper and against the carrier. The Carmack Amendment required the

issuance of a receipt or bill of lading, and declared what its effect should be, but it did not prescribe any period of limitation.

Prior to the Cummins Act, and in the absence of any federal statute fixing a minimum period of limitation, the liability imposed by the federal statute might be limited or qualified by special contract with the shipper, provided the limitation or qualification was just and reasonable and did not exempt from loss or responsibility due to negligence. *Missouri, Kansas & Texas R. R. Co. v. Harriman,* 227 *U. S.* 657, 33 *Sup. Ct.* 397, 57 *L. Ed.* 690; *Texas & Pac. Ry. Co. v. Leatherwood,* 250 *U. S.* 478, 39 *Sup. Ct.* 517, 63 *L. Ed.* 1096.

Under the Cummins Act, a bill of lading may not provide for a limitation shorter than two years for instituting suit, but it may prescribe a longer period.

[2] The other ground of demurrer to the fourth or first special plea, is that the terms and conditions of the bill of lading, as alleged in the fourth plea, became inoperative during the period of federal control.

The *Lazarus Case (D. C.),* 271 *Fed.* 93, relied on by both sides, does not seem to be applicable to the present case, for the reason that there was no bill of lading issued to the shipper. There was no express contract between the carrier and shipper, and the court held that the period fixed by the bill of lading filed by the carrier with the Interstate Commerce Commission was "a period of limitation prescribed by federal statutes." The court said:

"It may be where there is a valid contract between the carrier and the shipper for a period longer [than that fixed by statute], even by so short a time as one day, that it would be improper to speak of the limitation as 'prescribed by' the statute."

[3] But assuming that the statute does apply, and that the period of federal control is to be excluded from the period of limitation, even when there is a contract between the carrier and the shipper, as in the present case, where a bill of lading was sent to the shipper, still the statute is limited to cases where the *cause of action arose before federal control.* There is nothing in this case to show when the cause of action arose. There was no agreement, so

far as we know, at what time the goods were to be delivered, and in the absence of such a contract, we assume that the time of delivery was a reasonable time after the goods were received by the carrier. What is a reasonable time usually depends very much upon circumstances and conditions existing at the time, and it may be a question for the jury to determine. Certainly it cannot be determined until the evidence is heard at the trial of the case. So far as the pleadings show, the cause of action may have arisen before or during federal control, although the defendant does say in his plea that—

"the tank car in question arrived at destination on or about February 4, 1918, and was duly delivered to the consignee, and that this was a reasonable time for delivery of the property referred to."

But it does not follow that an earlier date might not have been a reasonable time, for the property was received November 17, 1917.

Our attention has been called to a decision of the United States Circuit Court of Appeals for the Second District, delivered very recently, and reversing the judgment in the Lazarus Case. The appellate court (*N. Y. Central Ry. Co. v. Lazarus*, 278 *Fed.* 900) said:

"It is clear to us that in the uniform bill of lading the condition as to the two years became a part of the agreement for the transportation of the property in question. * * * The time within which the defendants in error were entitled to bring an action is therefore one fixed by the contract and not by statute, and the extension of time granted by the provision of the Transportation Act does not permit adding thereto the period of federal control, and it cannot apply, so as to change the terms of the contract entered into between the carrier and the shipper. * * * Where the time within which an action could be brought is agreed upon by the terms of the contract of shipment, it is one of the terms and conditions thereof and Congress could not deprive the plaintiff in error of this property right, for to do so would be a violation of the provisions of the Fifth Amendment."

This court held that *Section* 206 (f) of the Transportation Act (upon which the plaintiff in the present case relies), does not apply to all periods of limitation, whether applied by contract, regulation or statute; that Congress did not intend a different meaning in the

use of the words "periods of limitation" as used in paragraph (f) than their meaning as defined in paragraph (a), and that the words as used in such sections apply to limitations now prescribed by the state or federal statutes.

While the decision of the District Court in the *Lazarus Case*, 271 *Fed*. 93, has been reversed, the decision of the appellate court is distinctly in favor of the defendant.

But it is contended by the plaintiff that the plea is bad because the defendant has failed to allege that the suit was not brought within two years after notice in writing was given by the carrier to the claimant that the carrier has disallowed the claim.

This contention is based on a provision in *Transportation Act of* 1920, § 438 (41 *Stat*. 494), which reads as follows:

"Such period [two years] for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

This was in effect an amendment or supplement to the Cummins Amendment passed in 1915, which made it unlawful for a carrier to provide by contract a shorter period for the institution of suits than two years. The Cummins Act did not say from what time the period of limitation should be computed, and this omission the Transportation Act was designed to supply.

But the contract of shipment in this case, made pursuant to the Cummins Amendment, provides that:

"Suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property; or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

We have held that this was a good and valid contract at the time it was made, and one of its material provisions was the period of limitation for the institution of suits where there is failure to deliver the property. The contract said "two years and one day after a reasonable time for delivery had elapsed." The Transportation Act, passed more than two years after the contract was made,

says two years after notice by the carrier to the claimant that his claim has been disallowed.

It is true, generally speaking, as claimed by the plaintiff, "that the limitation of an action is a matter of remedy and not of right." 36 *Cyc.* 1142; *Lewis' Sutherland, Stat. Const.* (2d *Ed.*) § 668; *Terry v. Anderson*, 95 *U. S.* 628, 24 *L. Ed.* 365. (a)

And it may be that an extension, by a subsequent statute, of the time given under a prior statute for the institution of suits, would affect the remedy only; but we think where the limitation is embodied in and made a part of the contract, as in the present case, the subsequent statute does not apply.

[4] To the defendant's fifth or second special plea, the plaintiff has also demurred, and assigned the following grounds:

"That it nowhere appears in said plea that the consignor undertook to furnish and did furnish the car used for the transportation of said goods for a sufficient consideration.

That it nowhere appears that the defects were such that an ordinary inspection by the consignor would bring them to the attention of the consignor.

That it nowhere appears that the consignor knew of the defective condition of the said car at the time said goods were loaded.

That it nowhere appears that the consignor released the defendant from liabilities for injuries resulting from the said defective vehicle."

The cases cited on this question are more confusing than helpful. We are convinced, however, that a carrier is not relieved of liability for loss or damage to goods caused by a defective car, merely because the shipper furnished the car. In one of the cases cited it was shown that the shipper had his own inspector. *Frohlick v. Pa. Co.*, 138 *Mich.* 116, 101 *N. W.* 223, 110 *Am. St. Rep.* 310 (4 *A. & E. Annot. Cas.* 1140). And in another it was alleged that the car was defective, but that such defect was not discoverable by the carrier by the exercise of reasonable care. *Ala. G. So. R. Co. v. Morris & Co.*, 249 *Fed.* 312, 161 *C. C. A.* 320.

In most of the cases cited by the defendant, something was shown from which it might reasonably be inferred that the shipper had released the carrier from the duty of inspection.

We are of the opinion that although the shipper furnished a defective car, the carrier is liable for loss resulting from the defect, if the loss could have been prevented by reasonable diligence

    (a) *See, also, Cook v. Gray, 2 Houst,. 455, and Gray v. Cook, 3 Houst. 49.*

on the part of the carrier in inspecting the car. (*Ala. G. So. R. Co. v. Morris & Co., supra;* see, also, *Ala. & V. Ry. Co. v. Amer. Cot. & Oil Co.,* 249 *Fed.* 308, 161 *C. C. A.* 316) ,unless the facts are such as to warrant the conclusion that the shipper had released the carrier from any liability (*Cleveland, C., C. & St. L. Ry. Co. v. Louisville Tin & Stove Co.,* 33 *Ky. Law Rep.* 924, 111 *S. W.* 358, 17 *L. R. A.* [*N. S.*] 1034).

The plaintiff's demurrer is, therefore, overruled as to the defendant's fourth and sixth pleas, or first and third special pleas, and sustained as to the fifth, or second special, plea.