FIRESTONE PLANTATIONS CO. (FIRE-STONE TIRE & RUBBER CO., Intervener) v. PAN ATLANTIC S. S. CORPORATION et al.

SAME v. UNITED STATES.

District Court, S. D. New York.

May 6, 1948.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem and Alfred Ogden, both of New York City, of counsel), for libellant.

John F. X. McGohey, U. S. Atty., and Gay & Behrens, all of New York City (Edward J. Behrens and Mack Kreindler, both of New York City, of counsel), for respondent United States.

Gay & Behrens, of New York City (Edward J. Behrens and Mack Kreindler, both of New York City, of counsel), for respondents Pan Atlantic Steamship Corporation and American-West African Line, Inc.

BYERS, District Judge.

This consolidated cause is based upon a claim for cargo damage to a shipment of crude rubber ex S.S. Pan Crescent arriving in New York on November 10, 1942, on a voyage from Liberia. The libellant, Firestone Plantations Company, is a subsidiary of intervening libellant Firestone Tire & Rubber Company, and it is the latter which seeks recovery from the respondent Pan Atlantic Steamship Corporation as owner of the Pan Crescent; the respondent American-West African Line, Inc., is not now before the Court because the libel was withdrawn as to it at the hearing.

Nothing is asserted on behalf of the Firestone Plantations Company, the grower of the rubber, since ownership of the cargo was actually acquired by Rubber Reserve Company, but the libels were filed by the former as shipper of the cargo "for the benefit of all parties who may be or may become interested" as their interests may appear.

If the Firestone Tire & Rubber Company had acquired any rights in the cargo as such and while it was cargo, or as assignee of the bills of lading, that pleading would probably have been sufficient for its purposes as a suitor. Knute Nelson, 1939 A.M.C. 1024.[1]

---

[1] No opinion for publication.

402

The ship was operated under standard form of charter with the United States, War Shipping Administration, agreement WSA 255.

The Rubber Reserve Company was a corporate agency of the Government (that is, it was a subsidiary of Reconstruction Finance Corporation) the office of which was to acquire and dispose of all rubber imports in the interests of the nation.

The Rubber Reserve Company sold all or so much of the crude rubber on the Pan Crescent as is here involved, to Firestone Tire & Rubber Company, pursuant to a written expression of intention that at the request of the Rubber Reserve Company, the said Firestone Tire & Rubber Company "shall agree to purchase from Rubber Reserve Company ex-dock New York, all crude rubber or latex which Rubber Reserve Company purchases from the Firestone Plantations Company".

Thus it is clear that the Rubber Reserve Company could request the Firestone Tire & Rubber Company to buy whatever the former had purchased from the latter's grower; if no such request were made, there would of course be no purchase.

■ The transaction being ex-dock, I think the purchaser made its bargain for the crude rubber in the condition in which it was at that place. If it had suffered damage while on the ship, presumably the price to be paid would have been adjusted by negotiation so as to allow for the deterioration then present.

The libellant relies upon the following cases to demonstrate the contrary:

Munson S.S. Line v. Rosenthal, D.C., 6 F.Supp. 374:

The present bearing of this case is that a commission merchant who had made advances to the owner of a cargo of tomatoes had a sufficient interest to enable him to bring suit for damages alleged to have been sustained by the cargo, while in transit. In other words, it was not the case of a purchaser who acquired title ex-dock.

The Nichiyo Maru, 4 Cir., 89 F.2d 539, 543:

In this case damage to cargo for improper stowage was held to sustain the cause of Wellman who was the purchaser of the cargo, the consignee, and the assignee of the bill of lading. He in turn had sold to Standard whose payment of the purchase price to Wellman put him in funds to pay his letter of credit in faith of which the shipment had been made. Standard was permitted to intervene so as to assert its equitable interest in Wellman's recovery for damages sustained by the cargo while in transit.

The Court says: "The equities between the holder of the bill of lading and such persons (as Standard) are not matters which a carrier guilty of negligence can urge in his defense." (Citing cases.)

It is to be observed that cargo loss creates right of reimbursement on the part of the cargo owner or his assignee, and hence of one who has a special property in the cargo. If the Firestone Tire & Rubber Company is the assignee of Rubber Reserve Company, or if it acquired what is loosely called an equitable property in the cargo, I have entirely misunderstood the testimony.

The Firestone Tire & Rubber Company did nothing whatever to enable the Rubber Reserve Company, the cargo owner, to pay for the rubber to the shipper, the Firestone Plantations Company, which is the point of departure from the cited case, for it was the payment made by Standard to Wellman, the assignee of the bill of lading, which enabled him to meet his obligation secured thereby.

Here, Rubber Reserve Company paid in the first instance for the rubber while it was afloat, and by invoices all dated December 15, 1942, over 30 days after delivery to the dock in New York, it sold to the Firestone Tire & Rubber Company, not by transfer of the bills of lading or by creating any special property therein, but by independent transaction. If any cargo loss was sustained, it was by the cargo owner, but none was proved, since the sale was for the same price that Rubber Reserve Company had paid.

The chances are that the exigencies of the requirements of a nation at war explain the lack of formality attending these transactions; had they been conducted under ordinary peace-time conditions, a

circumspection would have been observed with respect to possible rights and responsibilities reasonably to be anticipated in the carriage of such a cargo by inexperienced agencies, which had to be foregone in the face of more pressing considerations.

If that be the true explanation, it does not suffice to substitute for actual transactions a mirage of what otherwise might have occurred.

The fact that the Firestone Tire & Rubber Company might have become assignee of the bills of lading, or made advances against them, cannot obscure the fact that it did neither; the fact that it could have acquired title to the cargo of crude rubber while it was yet afloat on board the Pan Crescent, does not mean that its rights as intervenor are the same as though it had; the circumstance that it acquired title ex-dock means that it bought rubber on the dock, as it then was, not that it acquired rights which by some indefinite process could be related back to an earlier time.

It results that the intervening libels must be dismissed for failure of proof.

█ If the case has not been correctly reasoned thus far, then it must be said that the proof is deemed to establish that the stowage of crude rubber in the alleyways adjacent to the engine-room which originally constituted bunkers (when the ship burned coal in the passenger trade) but had been rebuilt into cargo space, was responsible for heating the rubber, and causing it to fuse and otherwise distort some bales; and in other respects deteriorate so as to involve extra labor to effect restoration to the condition in which it was shipped.

There was available space in one or two of the lower holds, to take so much of this rubber as was shown to be heated, fused and massed at outturn, because it was stowed in spaces which were exposed to engine and fireroom heat, and which were not ventilated.

█ For the reasons stated, however, it is held that the libels and the intervening libels must be dismissed for failure of proof, with costs.

If on appeal this decision is found to be erroneous, the cause can be sent to a commissioner to report on the amount of the intervening libellant's damages, without the taking of further testimony as to the fact of improper stowage.

Findings and Conclusions are filed herewith.

In connection with the opinion of even date in this cause, the Court makes the following:

### Findings

1. At all times material to this cause, the S.S. Pan Crescent was owned by the respondent Pan Atlantic Steamship Corporation, and was being operated by the United States of America under a time charter with the War Shipping Administration, the number of the agreement being WSA 255.

2. During the months of September and October, 1942, the said ship loaded a cargo of crude rubber at Marshall and Cape Palmas in Liberia.

3. The Firestone Plantations Company, a Delaware corporation (a wholly owned subsidiary of Firestone Tire & Rubber Company, the intervening libellant) was the shipper of the said cargo.

4. The Pan Crescent sailed early in October of 1942, bound for the United States, and arrived in New York on or about November 10, 1942.

5. Title to the cargo of crude rubber was acquired by Rubber Reserve Company after the ship was so laden in the said ports of Liberia, the exact date of which does not clearly appear from the testimony.

6. The Rubber Reserve Company was a subsidiary corporation owned and controlled by the Reconstruction Finance Corporation, a governmental agency, and at the time of the acquisition of title to the said cargo and at all times material to this controversy, said Rubber Reserve Company was acting solely for and in behalf of the United States of America.

7. After the arrival of the Pan Crescent in the port of New York on or about November 10, 1942, and after the cargo had been discharged to the dock at which she was berthed, said Rubber Reserve

Company sold so much of the said rubber as is involved in this cause, to Firestone Tire & Rubber Company, ex-dock.

8. The said sale was made after the said rubber had been inspected by representatives of the Firestone Tire & Rubber Company, and the said sale was evidenced by three invoices, all of which bore date of December 15, 1942.

9. The Firestone Tire & Rubber Company paid to the Rubber Reserve Company the full price for the said rubber which said Rubber Reserve Company had paid to the shipper, Firestone Plantations Company.

10. The said crude rubber had been formed and rubber wrapped into bales (called bare back rubber) by or on behalf of the Firestone Plantations Company, before being laden on the said ship Pan Crescent at the named places in Liberia, and little or no talc or soapstone was sprinkled upon the said bales because of a shortage there existing.

11. All of the said bales were laden into the said ship from small boats in which they were transported from the shore to the ship's side, and during the course of such transportation many of the said bales became wet from sea water which fell upon them during that movement.

12. The said cargo of crude rubber was stowed in the No. 1 lower hold and in No. 2 'tween deck, and in Nos. 2 and 3 shelter deck alleyways adjacent to the engine-room.

13. Much of the said rubber that was stowed in the said alleyways was found on discharge to be massed, or melted, and in some instances the bales were fused together, and in others there had been adhesion to the sheathing which protected the engine-room space to which the said alleyways were adjacent.

14. The conditions recited in the foregoing Finding, of fusing, etc., were caused by heating of the rubber while it was being carried in the said vessel.

15. The alleyway spaces above referred to were not ventilated as were the cargo holds of the vessel, by ventilators constructed for that purpose.

16. The rubber stowed in the said alleyways could have been stowed in the No. 1 lower hold, as there was sufficient space available for that purpose when the cargo was laden.

17. Such damage to said cargo as was caused by overheating was the result of faulty stowage.

### Conclusions

1. The libels must be dismissed for failure of proof that the libellant, Firestone Plantations Company, sustained any loss whatever.

2. The intervening libels of Firestone Tire & Rubber Company must be dismissed for failure of proof that it was the owner of or had any interest in the said cargo as such, either as assignee of the bills of lading, or because it advanced any sums of money to enable the Rubber Reserve Company to purchase the said cargo; or that it acquired any rights whatever in and to the said rubber until it purchased the same after inspection ex-dock, New York City.

3. The said libels and the said intervening libels must be dismissed, with costs.

Settle decree.