**NATIONAL STARCH & CHEMICAL CORPORATION, Plaintiff,**

v.

**SS HERMIONE, her engines, boilers, etc., et al., Defendants.**

**No. 73 Civ. 4868.**

United States District Court, S. D. New York.

June 6, 1975.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for plaintiff; Martin B. Mulroy, New York City, of counsel.

Boal, Doti & Larsen, New York City, for defendant Amber Maritime Corp.; Arthur M. Boal, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, National Starch & Chemical Corporation, the purchaser of 25,550

bags of tapioca flour shipped from Bangkok aboard the SS Hermione, brings this action against the defendant, Amber Maritime Corp., the time charterer of the vessel, to recover for cargo damage and nondelivery of a portion of the shipment.

Thai Tapioca, Ltd. of Bangkok there delivered to the vessel the merchandise, for which four clean bills of lading were issued by the defendant to the order of Thai Tapioca, which endorsed them to an affiliate, Tapioca Associates. Long prior to the shipment, on March 24, 1972, Tapioca Associates agreed to sell the merchandise to the plaintiff, ex dock. On August 23, 1972, the contract between Tapioca Associates and plaintiff was modified by a writing which provided that National Starch & Chemical Corporation was to secure "risk coverage under [its] open marine and war risk insurance policy . . . for the above shipments upon declaration at the ex dock value." Their arrangement further provided: "In event of loss due to marine or war risk perils, resulting in non-delivery, Tapioca Associates, Inc. will be paid versus shipping documents."

On arrival of the goods in the United States in November 1972 they were outturned at two ports, Philadelphia and Baltimore. Tapioca Associates endorsed the bills of lading to its forwarding agents, who surrendered them to the carrier, together with an order to deliver the merchandise to National Starch & Chemical Corporation. It is not disputed that a portion of the cargo was damaged and also that there was nondelivery of another portion. The parties have stipulated as to the damages for these items. What is at issue is plaintiff's right to recover the damages. The defendant contends that plaintiff was not the owner or holder of the bills of lading at any time, and was not the owner of the tapioca flour at the time it

is claimed it was damaged, and accordingly is not entitled to recover.

▮ While it is true that the bills of lading were not formally endorsed or assigned to plaintiff, it is clear that at all times, even before the issuance of the bills of lading, plaintiff, as the purchaser of the yet to be delivered shipment, was the beneficial owner thereof. This is underscored by the August 23 letter agreement between plaintiff, as purchaser, and Tapioca Associates, as seller of the shipment. The terms of that agreement provided that plaintiff was to be obligated for the full purchase price regardless of the condition of the goods upon delivery, plaintiff was to bear the risk of any damage to the goods during transit, and plaintiff, not the seller (as usually is the case in an ex dock sale), was to insure against that risk. Under this arrangement, even if plaintiff was not the formal holder of legal title, it was at least the equitable or beneficial owner and is entitled to maintain the action against the carrier for the loss sustained.[1]

Firestone Plantations Co. v. Pam Atlantic S.S. Corporation,[2] relied upon by defendant, is distinguishable. There the court did dismiss a cargo damage action brought by a purchaser, which the court noted was not an assignee of the bills of lading. But in that case the plaintiff-purchaser had agreed to purchase all crude rubber or latex that another party, a governmental agency with responsibility for acquiring and disposing of all rubber imports, purchased from the initial seller. The plaintiff purchased the rubber "by independent transaction" through invoices dated over thirty days after delivery to the dock. The court expressly noted that plaintiff did not acquire any rights in the cargo while it was in transit and explained its holding:

"The transaction being ex-dock, I think the purchaser made its bargain

---

1. *See* Elia Salzman Tobacco Co. v. SS Mormacwind, 371 F.2d 537, 539–40 (2d Cir. 1967) ; M. W. Zack Metal Co. v. S.S. Birmingham City, 291 F.2d 451, 453 (2d Cir. 1961).

2. 77 F.Supp. 401 (S.D.N.Y.1948).

for the crude rubber in the condition in which it was at that place. If it had suffered damage while on the ship, presumably the price to be paid would have been adjusted by negotiation so as to allow for the deterioration then present." [3]

In the instant case, as explained above, the plaintiff made its bargain for the goods as they were when shipped, obligated itself to pay its seller the agreed upon price regardless of any damage suffered in transit, and assumed the risk of any loss due to damage in transit.

Insofar as the defendant claims that plaintiff was not the owner of the cargo, its only legitimate concern is that in the event it is found liable, it is not called upon to pay damages twice for the same loss. There is no danger of double recovery in this case since Tapioca Associates upon this trial expressly disavowed any claim for loss in connection with the cargo. Moreover, Tapioca Associates, in a suit in the Eastern District of New York referred to hereafter, did not include any such claim. Under all the circumstances, the defendant cannot defeat plaintiff's claim by contending that only Tapioca may assert such a claim.[4]

The defendant makes a further contention that plaintiff is barred from recovery in this action by reason of a judgment entered in an action brought in the Eastern District court by Tapioca Associates against the defendant herein, the carrier, to which action plaintiff here was not a party, to recover for increased trucking charges made necessary when the cargo was unloaded at a port other than that originally designated. This plea must fail in the light of defendant's own position in opposing consolidation of this action with the Eastern District action. The defendant expressly acknowledged that "[t]hat suit [the Eastern District action] does not involve in any way cargo damage. . . . The issues in these two cases are entirely separate and distinct and no advantage will be obtained by having them tried at the same time and before the same Judge."

Plaintiff established a prima facie case of liability by showing receipt of the goods by the defendant carrier in good condition, as evidenced by the clean bills of lading,[5] and a combination of nondelivery and delivery in a damaged condition.[6] The defendant bears the burden of showing that the damage was due to one of the "excepted causes" under the Carriage of Goods by Sea Act ("COGSA").[7] In this case the defendant contends that the damage was caused by "perils of the sea"[8] or acts or omissions of the shipper its agent[9]—namely, inadequate packaging.

The only evidence with respect to weather conditions established that the vessel encountered two storms, but that such storms would normally be expected on the voyage and the wind force during those storms was not unusual. Defendant has not demonstrated that any condition encountered by the vessel amounted to a "peril of the sea."[10]

The defense of inadequate packaging does not affect plaintiff's claim of nondelivery; it only relates to the claim for damage to delivered goods. Plaintiff's and defendant's witnesses differed as to whether the palletized tapioca was covered on the top and all four sides with fiberboard, whether there were vertical posts at the four corners of the pallet, and whether the bags of tapioca were glued to each other and to the floor of the pallet. Photographs admitted into

---

3. *Id.* at 402.

4. *See* Elia Salzman Tobacco Co. v. S.S. Mormacwind, 371 F.2d 537, 540 (2d Cir. 1967).

5. 46 U.S.C. § 1303(4).

6. *E. g.*, Demsey & Associates v. S.S. Sea Star, 461 F.2d 1009, 1014 (2d Cir. 1972).

7. *Id.* at 1015.

8. 46 U.S.C. § 1304(2)(c).

9. 46 U.S.C. § 1304(2)(i).

10. *See, e. g.*, R. T. Jones Lumber Co. v. Roen S.S. Co., 270 F.2d 456, 458 (2d Cir. 1959).

evidence support the defendant's position that two sides of most pallets were substantially exposed, although all edges were protected by fiberboard. But even accepting this fact, and assuming that the pallets did not have posts at each corner and that the bags were not glued in any way, it does not follow that the packaging was inadequate. The defendant's witness, a marine surveyor, testified that shippers of tapioca at the time alternated between a four-sided package and a two-sided package, and that he had seen other shipments packed the same way that outturned without damage. There was a lack of competent proof that the manner of packing was the cause of the damage.

Plaintiff is entitled to recover the total stipulated amount of damages, $15,-929.60.