UNITED STATES of America,
Plaintiff-Appellant,

v.

CENTRAL GULF STEAMSHIP CORPORATION and Robert H. Wall, Inc., Defendants-Appellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

ROBERT H. WALL, INC., and Central Gulf Steamship Corporation, Defendants-Appellees.

No. 72–2941.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1975.

Rehearing Denied Sept. 26, 1975.

Gerald J. Gallinghouse, U. S. Atty., John R. Schupp, Asst. U. S. Atty., New Orleans, La., Anthony W. Gross, Admiralty & Shipping Section, Dept. of Justice, Ronald R. Glancz, Walter H. Fleischer, Dept. of Justice, Washington, D. C., for the U. S.

Robert R. Acomb, Jr., John R. Peters, Jr., New Orleans, La., Ragan & Mason, Washington, D. C., for defendants-appellees.

Before RIVES, GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

Shipments of wheat flour through southern ports sometimes become infested by various species of weevils, and responsibility for the resulting damage often depends upon whether the shipper or the carrier must bear the burden of proof.[1] The present appeal was argued and submitted March 14, 1973, three weeks after another panel of the Court had heard *United States v. Lykes Bros. Steamship Co., supra.* Decision of this appeal awaited disposition of *Lykes Bros.* and the filing of supplemental briefs written in the light of the *Lykes Bros.* opinion. After careful consideration, we conclude that the judgment of the district court should be vacated and the case remanded for further proceedings, findings, and entry of judgment in accordance with the *Lykes Bros.* opinion (511 F.2d at 224, 225).

The statement of facts by the district court (340 F.Supp. 473) permits a brief summary here. All pertinent events occurred in the year 1964. The flour was milled in June at Kansas City, Kansas, by Flour Mills of America; was shipped by rail from Kansas City on June 24 and 27 and July 2, and was unloaded and delivered to Gulf Steamship Corporation between June 30 and July 9. Dock receipts for the 46 cars of flour were signed by Central Gulf's agent, John A. Merritt & Co. As to 26 cars, the receipts noted no exceptions. As to the other 20 cars, 28 bags from 3 cars were rejected for wetness, 29 bags from 12 cars were found to be torn, and were "recoopered" (resewed) without loss of contents. Other exceptions were noted as to bag count. There were no exceptions or notations regarding infestation. Of course, an inspection of this kind is not conclusive but is " 'evidence only of apparent or external good condition'." 340 F.Supp. at 482; see 511 F.2d at 223.

1. *E. g.:* United States Shipping Board v. Texas Star Flour Mills, 5 Cir. 1926, 12 F.2d 9 (Galveston); United States v. Central Gulf Steamship Corporation, E.D.La.1970, 321 F.Supp. 945, *aff'd,* 456 F.2d 1281 (5 Cir. 1972 (New Orleans); United States v. Lykes Bros. Steamship Co., E.D.Tex.1971, 339 F.Supp. 1223, *vacated and remanded,* 511 F.2d 218 (5 Cir. 1975) (Houston); and the present case, United States v. Central Gulf Steamship Corporation, E.D.La.1972, 340 F.Supp. 473 (Pensacola).

■ The record presents a question as to whether the United States met its "considerable burden of going further to prove actual condition." 511 F.2d at 224. Six pages of the Government's original brief (pp. 7–13) are filled with a recital of the inspections and precautions employed at the Kansas City Mill in preparation of the railroad cars, in sealing and fumigating the cars after loading, and in carrying out programs of cleanliness and for the prevention of infestation. This evidence was not controverted.

■ However, the district court drew inferences from the estimated life cycle of the weevils, the extent and thoroughness of the infestation on August 11 when Central Gulf for the first time after taking custody inspected the flour, and from other circumstances described in its opinion, and concluded that "these facts * * * establish that the flour was in all probability infested when it was received by Central Gulf." 340 F.Supp. at 483. We cannot say that such a conclusion based upon such evidence is clearly erroneous. *McAllister v. United States,* 1954, 348 U.S. 19, 24, 25, 75 S.Ct. 6, 99 L.Ed. 20.

■ There remains, however, the carrier's continuing obligation to care for the flour while in its custody, as to which the district court held:

"The government also alleged that Central Gulf did not take as many precautions as it should have taken because it failed to conduct inspections while the flour was in its custody. Although Boles testified that an examination of the flour on at least a weekly basis was necessary to provide for an early discovery of any infestation, he was unable to say when the instant infestation began or if regular inspections would have prevented its spread. If early discovery of the infestation is the key to the government's case, they should bear the loss since Woody, one of their agents, observed the infestation several days before he did anything about it."

340 F.Supp. at 483–484.

That holding was not made in accordance with the standards expressed in *Lykes Bros., supra.* We therefore vacate the district court's holding, along with the judgment, and remand the case for further proceedings, findings and entry of judgment in accordance with the *Lykes Bros.* opinion (511 F.2d at 224, 225).

Vacated and remanded.

