CANADIAN REFRACTORIES DIVISION OF DRESSER INDUSTRIES, INC., Robbins, Fleisig Forwarding, Inc. and Joshua Olsha, d/b/a J. H. Textile, Plaintiffs,

v.

S. S. HELLENIC NAVIGATOR, her engines, boilers, etc. and Hellenic Lines, Limited, Defendants.

No. 77 Civ. 5027 (RWS).

United States District Court, S. D. New York.

July 6, 1978.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for plaintiffs; by Allan G. Bowdery, Martin B. Mulroy, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants; by Chester D. Hooper, Nicholas H. Cobbs, New York City, of counsel.

## OPINION

SWEET, District Judge.

This action has been brought as an admiralty claim within the meaning of Rule 9(h), Fed.R.Civ.P., for breach of a maritime contract. The plaintiff seeks to recover the cost of cargo lost when a section of defendant's pier collapsed. Defendant counterclaims for the cost of repairing its pier.

Plaintiff delivered, via several trucks and over a period of three days, 282 bales of secondhand cotton piece goods and 125 pallets of firebricks to the defendant's dock site at 57th Street in Brooklyn. The Documentation and Truck Detention Records were signed by each truck driver and the "checker" employed by the defendant and contained the date of delivery, the number of pallets in each truck and the gross (total) weight of each truckload of firebricks. A copy of each Documentation and Truck Detention Record was supplied to the defendant at the time each truck was unloaded.

The shipping services of the defendant begin after the cargo is unloaded from each truck and placed on the dock or the pier. As the cargo comes off each truck the checker reviews the contents and completes the dock receipt. It is the function of the Superintendent of the pier to determine where each shipment is to be placed.

The firebrick was en route to Pakistan and was manufactured in accordance with the buyer's specifications. The defendant had previously shipped similar cargoes, though not in such quantity. The pallets on which the firebrick was packaged contained no notification of their weight. There was no testimony at trial to establish that there is a consistent custom or practice as to marking a pallet with its weight.

Captain Richard Anderson, a marine surveyor who testified on behalf of the defendant, gave testimony as to the "stowage factor" of firebrick, that is, the cubic feet it requires to stow one ton in weight of a particular commodity, as set forth in one particular treatise. Captain Anderson testified that the cubic footage necessary to store one ton (2,240 pounds) of firebrick was between 25 and 30 cubic feet and that the pallets in question were 28.65 cubic feet and contained approximately 3,795 pounds of firebrick. However, there was no testimony that the defendant considered or relied upon the stowage factor (which relates only to the stowage of cargo on board a vessel) in its placement of the cargo on the pier.

The parties stipulated that the cause of the collapse of the pier was the loading of more weight than that section of the pier could safely carry. The collective weight of the pallets was readily ascertainable by defendant's pier personnel from the Documentation and Truck Detention Records and was in fact known to the defendant's agents. Defendant asserts that the cargo was in a dangerous condition as a result of its weight and density and that the plaintiff was under an obligation to warn the carrier of that condition. Absent some extraordinary shape or other characteristic, it is difficult to conceive of circumstances involving the movement of documented cargo where weight in and of itself becomes an unknown dangerous condition. None such extraordinary shape, characteristic or other circumstance was established here.

Defendant asserts for the first time in its post-trial brief that the defendant should be governed by a negligence standard, citing *David Crystal Inc. v. Cunard S.S. Co. Inc.*, 223 F.Supp. 273 (S.D.N.Y.1963) *aff'd* 339 F.2d 295 (2d Cir. 1964) and *Commercial Molasses Corp. v. New York Tank Barge*

*Corp.*, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941). However, *David Crystal* related to the liability of a carrier, as warehouseman, and *Commercial* dealt with the liability of a bailee of goods that had not assumed a common carrier's obligation. There is no evidence before this court that the defendant's actions were anything but those of a carrier.

Paragraph one of the Bill of Lading issued by the defendant states as follows: "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of any country where applicable. All the provisions of such Act are incorporated herein and except as may be specifically provided herein shall govern throughout the entire time that the goods are in the custody of the carrier. . . ." [1]

Thus, the Carriage of Goods by Sea Act ("COSGA") 46 U.S.C. § 1300 *et seq.* would be applicable as long as the defendant had custody of the goods. *See Mackey v. United States*, 197 F.2d 241 (2d Cir. 1952); *United States v. Central Gulf Steamship Corp.*, 340 F.Supp. 473 (E.D.La.1972) *vacated on other grounds* 517 F.2d 687 (5th Cir. 1975). Such is consistent with section 1300 of COSGA, which requires that every bill of lading which is evidence of a contract for the carriage of goods by sea shall be subject to COSGA, and section 1302 of COSGA, which subjects the carrier in relation to loading, handling, stowage, carriage, custody, care and discharge of the goods to the provisions of sections 1303 and 1304 of COSGA. The evidence clearly establishes that the defendant had custody of the goods which are the subject of this suit.

■ Applying the provisions of COSGA, a claim based upon a carrier's failure to deliver cargo delivered to it creates a *prima facie* case of liability. *See National Starch & Chemical Corp. v. SS Hermione*, 399 F.Supp. 1177 (S.D.N.Y.1975) *aff'd* 538 F.2d 310 (2d Cir. 1976); *Demsey & Associates v. S.S. Sea Star*, 461 F.2d 1009 (2d Cir. 1972).

The defendant then bears the burden of establishing that the loss was due to one of the "excepted clauses" under section 1304 of COSGA. The defendant has failed to carry the burden of its claim that the loss was due to an act or omission of the owner of the goods in failing to give notice of a dangerous condition and has further failed to establish that it acted without actual fault or neglect. Therefore, plaintiff is entitled to recover for the goods lost by the defendant.

■ Defendant asserts, again for the first time in its post-trial brief, that plaintiff's claim is limited by section 1304(5) of COSGA. However, defendant offered no evidence and therefore has not established that the goods in question were shipped in "packages." The $500 limitation of section 1304(5) only applies to goods shipped in packages. Therefore, plaintiff is entitled to recover the cost of the goods lost. Defendant's counterclaim is dismissed.

Settle judgment on notice.

SO ORDERED.

---

[1]. Although paragraph four of the Bill of Lading specifically limits the liability of the carrier to only acts of negligence, such provision is null and void and of no effect. *See* 46 U.S.C. § 1303(8).