The **PORT OF TACOMA,** a municipal corporation, Appellant,

v.

**S.S. DUVAL,** Formerly **S.S. Mount Rainier,** etc., Appellee.

No. 19919.

United States Court of Appeals Ninth Circuit.

Aug. 8, 1966.

**616**

James J. Mason, of Binns, Petrich & Mason, Tacoma, Wash., for appellant.

Charles B. Howard, Robert J. Stowell, Richard W. Buchanan, of Summers, Howard & LeGros, Seattle, Wash., for appellee.

Before HAMLEY, MERRILL and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

This case presents a conflict between a claim of lien by the Port of Tacoma and a "no lien" clause in a charter party. There is no dispute as to the facts. The court rendered a summary judgment in favor of the ship owner and the Port appeals. We affirm.

The lien claim arises under a tariff establishing charges for wharfage and cargo handling services, which also contains the language set out in the margin.[1] The services were rendered to the S.S. Duval at a time when she was under bareboat charter containing a no lien clause.[2] The Port of Tacoma did not

---

1. "(b) Charges, Collected, From Whom: "Wharfage, loading and unloading, when not absorbed by ocean or rail carriers, are due from the owner, shipper or consignee of the freight. On transit freight in connection with ocean carriers, however, these charges (unless absorbed by rail carriers), and any wharf demurrage or miscellaneous charges accrued against said freight and of which the vessel, its owners or agents have been appraised, will be collected from and payment of same must be guaranteed by the vessel, its owners or agents. The use of a wharf by a vessel, its owners or agents, shall be deemed an acceptance and acknowledgment of this guaranty. Owners or agents of vessels, if and when permitted to make own deliveries of freight from wharf will be held responsible for payment of any wharf demurrage accrued against freight delivered by them."

        *       *       *       *       *

"(d) Charter Party Agreements, Sales Contracts, etc.:

"The existence of any agreement in connection with a charter party, sales contract, or otherwise, which purports to relieve a vessel, its owner, agent, or operator of any charge properly assessable against same under this tariff shall not relieve said vessel, its owner, agent, or operator from liability for the payment of such charge."

2. "20. LIBELS: A. Neither Charterer nor the master of the Vessel nor any other person shall have the right, power, or authority to create, incur or permit to be placed or imposed upon the Vessel any liens whatsoever other than for crew's wages or salvage. Charterer agrees to carry properly certified copies of this charter and the mortgage with the ship's papers on board the Vessel, and agrees to exhibit the same to any person having business with the Vessel * * *. If the Vessel shall be libelled or attached, the Charterer will forthwith take such steps as may be necessary to discharge or release the Vessel therefrom within 10 days from the date same became effective * * *.

"Charterer agrees to notify any person furnishing repairs, supplies, towage, or other necessaries to the Vessel that neither Charterer nor the master have any right to create, incur, or permit to be imposed upon the Vessel any liens whatsoever, except the crew's wages and salvage. Such notice as far as may be practicable shall be in writing. Charterer shall keep notices, printed in plain type of such size that the paragraph of reading matter shall cover a space not less than

know of these provisions; it made no inquiry; it simply relied upon the tariff.

Concededly, but for the tariff, the liens would not be valid, 46 U.S.C. § 973; Gilmore & Black, The Law of Admiralty § 9–46, at 566–68 (1957). See Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 1940, 310 U.S. 268, 275, 60 S.Ct. 937, 84 L.Ed. 1197; United States v. Carver, 1923, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; Colonial Beach Co. v. Quemahoning Coal Co., 1923, 260 U.S. 707, 43 S.Ct. 246, 67 L.Ed. 474. The Port says that the tariff gave constructive notice to the owner and makes the no lien provisions of the charter ineffective under the provisions of the Shipping Act of 1916, 46 U.S.C. §§ 801–842 and of the Intercoastal Shipping Act of 1933, 46 U.S.C. §§ 843–848. It is settled, however, that such filing gives constructive notice only "* * of everything contained in such published tariff schedules which is by law required to be therein inserted * *." Pacific S.S. Co. v. Cackette, 9 Cir., 1925, 8 F.2d 259, 260, cert. denied, 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426. We can find no such requirement of law as to the provisions of the tariff that purport to give the Port a lien valid against the owner in spite of the no lien provisions of the charter party.

We assume that the Port is correct in urging that 46 U.S.C. § 814 required the filing with the Federal Maritime Commission of an agreement called the "Northwest Marine Terminal Association Agreement" to which it was a party. That agreement contains the paragraph set out in the margin.[3] But

section 814 does not purport to give to such filed agreements the effect of tariffs, nor to make their filing equivalent to constructive notice of their contents to the world at large. It confers exemption from the anti-trust laws, if the Commission approves them. It excepts from the requirement of approval, "tariff rates, fares, and charges, and classifications, rules, and regulations explanatory thereof * * * if otherwise in accordance with law * * * upon compliance with the publication and filing requirements of section 817(b) * * *." Section 817(b) (1), however, deals only with the tariffs of "every common carrier by water in foreign commerce and every conference of such carriers." The Port is not such a carrier; the Northwest Marine Terminal Association is not such a conference. See definitions in 46 U.S.C. § 801. The Port does not rely on section 817(b).

Reliance is also placed on 46 U.S.C. § 844, which is a part of the Intercoastal Shipping Act. It applies only to tariffs of a "common carrier by water in intercoastal commerce." On its face, when construed with section 843, defining such a carrier, it would seem that it does not apply to the Port's tariff. The Commission, however, asserts that a marine terminal operator is embraced within the term "common carrier by water in intercoastal commerce." In re Transportation of Lumber through Panama Canal, 2 U.S.M.C. 143, 149 (1939). Assuming, without deciding, that this is correct, section 844 deals only with "rates, fares and charges for or in connection with transportation." We do not think that the lien provision falls within

six inches wide by nine inches high, framed, prominently in the chart room and in the master's cabin of the Vessel as follows:

"NOTICE OF BAREBOAT CHARTER" "This vessel is the property of SEAGATE STEAMSHIP COMPANY. It is under charter to American Tramp Shipping Development Corporation and, by the terms of the charter neither the Charterer nor the Master has any right, power or authority to create, incur, or permit to be

imposed upon the vessel any lien whatsoever, except for crew's wages and salvage."

3. "3. A copy of each terminal tariff effective hereunder containing all rates, charges, rules, classifications, regulations and/or practices, including additions thereto and changes therein, shall be furnished promptly to the United States Maritime Commission, Washington, D. C., through the Executive Secretary of the Association."

this language, nor the further language relating to "rules or regulations which in anywise change, affect, or determine any part of the aggregate of such aforesaid rates, fares or charges, or the value of the service rendered  *  *  *."

We find nothing in either of the acts upon which the Port relies that authorizes a tariff provision that has the effect of nullifying the provisions of the Maritime Lien Act, 46 U.S.C. §§ 971–75, and particularly § 973.[4] It follows, under that section and our decision in Pacific S.S. Co. v. Cackette, supra, that the owner of the S.S. Duval did not have constructive notice of the lien provision, and is not bound by it. See also United States v. S.S. Lucie Schulte, 2 Cir., 1965, 343 F.2d 897; The Western Wave, 5 Cir., 1935, 77 F.2d 695, 698.

Affirmed.

---

4. Under this section, no lien of the type here involved can attach when "the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party  *  *  *  the person ordering the  *  *  *  necessaries was without authority to bind the vessel therefor."