CITY OF NOME, Plaintiff,

v.

ALASKA STEAMSHIP COMPANY,
Defendant.

No. A–97–69 Civ.

United States District Court,
D. Alaska.

Jan. 8, 1971.

Peter B. Walton and Stephen C. Cowper, of Boyko & Walton, Anchorage, Alaska, for plaintiff.

Arthur D. Talbot, Anchorage, Alaska, M. Bayard Crutcher, of Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for defendant.

OPINION

PLUMMER, Chief Judge.

This action involves damage to a diesel engine which allegedly occurred while the engine was in the defendant's possession in transit from Illinois to the City of Nome. The defendant, Alaska Steamship Company, received the engine at its dock in Seattle from Northern Pacific Railroad. There is a material issue of fact as to whether a bill of lading was issued at that time and, if so, whether it was issued to the primary rail carrier or the switching line. There is also a dispute as to whether the bill of lading, if issued, was issued before or after the ship sailed.

The engine was delivered to the plaintiff, City of Nome, on August 2, 1967, and this suit was subsequently instituted on June 14, 1969. As an affirmative defense, defendant alleges that this action

is barred by the one year limitation of claims period contained in § 3(6) of the Carriage of Goods by Sea Act, 46 U.S. C.A. § 1303(6) (1958),[1] which had been incorporated into defendant's standard bill of lading pursuant to 46 U.S.C.A. § 1312 (1958).[2]

Plaintiff contends that because the bill of lading was either (1) never issued, or (2) issued to the wrong party, or (3) issued after the ship sailed, it

1. (6) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery.
  
*  *  *  *  *

In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered: * * *.

2. * * * Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: *Provided, however,* That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter. * * *

3. Every common carrier by water in intercoastal commerce shall file with the Federal Maritime Board and keep open to public inspection schedules showing all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route; * * * [The schedule] shall include the terms and conditions of any passenger ticket, bill of lading, contract of affreightment, or other document evidencing the transportation agreement. The terms and conditions as filed with the Federal Maritime Board shall be framed under glass and posted

had no notice, actual or constructive, of the limitation period contained in the standard bill of lading.

Defendant urges, however, that for purposes of this motion, actual notice is irrelevant because the standard bill of lading required as a matter of law to be filed with the Federal Maritime Commission [hereinafter referred to as the Commission] pursuant to 46 U.S.C.A. § 844 (Supp. 1970)[3], was binding on both

in a conspicuous place on board each vessel where they may be seen by passengers and others at all times. * * * Such schedules shall be plainly printed, and copies shall be kept posted in a public and conspicuous place at every wharf, dock, and office of such carrier where passengers or freight are received for transportation, in such manner that they shall be readily accessible to the public and can be conveniently inspected. In the event that any such schedule includes the terms and conditions of any passenger ticket, bill of lading, contract of affreightment or other document evidencing the transportation agreement, as herein provided, copies of such terms and conditions shall be made available to any shipper, consignee, or passenger upon request. Such terms and conditions, if filed as permitted by this section and framed under glass and posted in a conspicuous place on board each vessel where they may be seen by passengers and others at all times, may be incorporated by reference in a short form of same actually issued for the transportation, or in a dock receipt or other document issued in connection therewith, by notice printed on the back of each document that all parties to the contract are bound by the terms and conditions as filed with the Federal Maritime Board and posted on board each vessel, and when so incorporated by reference every carrier and any other person having any interest or duty in respect of such transportation shall be deemed to have such notice thereof as if all such terms and conditions had been set forth in the short form document.

As a common carrier by water, defendant filed a standard bill of lading with the Commission. Tariff #838, which was in effect from August 4, 1963 to May 13, 1968, expressly incorporated the Carriage of Goods by Sea Act with its one year statute of limitations. Tariff #879, which has been in effect since April 15, 1967, covers the route in question and expressly incorporates Tariff #838. De-

parties regardless of actual notice. The correctness of this latter assertion has been raised here by defendant's motion for summary judgment.

I.

Plaintiff's theory of the case rests on the proposition that in the absence of actual issuance of a bill of lading parties to a maritime shipping agreement are only on constructive notice of those documents on file with the Commission which relate to, or might conceivably have some effect upon, rates, charges and services. As the one year limitation period was procedural and did not relate to the substance of what is commonly understood to be a "tariff," plaintiff argues that it would have to have actual notice of that provision before it would be bound thereby.

The principle that actual notice must be given of all non-rate related contractual provisions is derived from Pacific Steamship Co. v. Cackette, 8 F.2d 259 (9th Cir. 1925), in which the court refused to incorporate a notice of claims period on file with the Commission into a standard form passenger ticket because such provision was not "properly included in or related to [a] system of rates and charges." 8 F.2d at 261. *See also,* Aspen Pictures, Inc. v. Oceanic Steamship Co., 148 Cal.App.2d 238, 248, 306 P.2d 933, 939 (1957).

Defendant points out that the cases relied upon by the plaintiff were decided before the Intercoastal Shipping Act, 46 U.S.C.A. §§ 843–848 (1958), as amended 46 U.S.C.A. §§ 843–848 (Supp. 1970), was amended to *require* water carriers to file standard bills of lading with the Commission.[4] Act of August 28, 1958,

Pub.L. No. 85–810, 72 Stat. 977, amending 46 U.S.C.A. § 844 (1958). Pacific Steamship Co. v. Cackette was, however, cited with approval by the Ninth Circuit in the 1966 case of Port of Tacoma v. S.S. Duval, 364 F.2d 615, 617. In that case the port attempted to enforce a maritime lien for wharfage—despite express provisions of the Maritime Lien Act and the fact that the boat, a charter vessel, sailed under a "no-lien" provision —on the grounds that such a lien was provided for in standard forms filed with the Commission pursuant to 46 U. S.C.A. § 844. The court ignored the 1958 amended language and held, presumably on the authority of Pacific Steamship Co. v. Cackette, that § 844 deals only with "rates, fares and charges for or in connection with transportation." 364 F.2d at 617. Defendant contends that this decision was erroneously based upon the pre-1958 statute and should be disregarded.

II.

Defendant's case hangs upon the scope and applicability of United States Navigation Co., Inc. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1931) in which the Supreme Court reasoned that the Shipping Act of 1916[5] should be construed in light of settled principles under the Interstate Commerce Act absent peculiar circumstances. The actual holding of the Court was considerably narrower and merely ruled that the Shipping Board, like the Interstate Commerce Commission, has primary jurisdiction over issues of fact in disputes arising under the Act.

Although most of the analogous cases arising under the Interstate Com-

---

fendant printed a short form of the standard bill of lading which contained notice that the contract of carriage was subject to the Carriage of Goods by Sea Act and the standard bill of lading on file with the Commission. Plaintiffs deny that a short form bill was ever properly issued.

4. Prior to 1958 only matters related to rates and services had to be filed with the Commission.

5. Carriers in the non-contiguous trade (Alaska, Hawaii, Puerto Rico) are governed by the Intercoastal Shipping Act of 1933. Carriers under both Acts are responsible to the Federal Maritime Commission, and the reasoning of United States Navigation Co., Inc. v. Cunard S.S. Co. is generally applicable to both Acts.

merce Act have involved variations from rates, charges or services on file with the Commission, several cases indicate that bills of lading filed with the Commission have the force of statute even as to procedural provisions, such as limitations on filing of claims. *See* Hartness v. Iberia & V. R. Co., 297 F. 622 (E.D. La.1924); Lazarus v. New York Central R.R., 271 F. 93, 95 (S.D.N.Y.1921). As a general rule, in land transport cases where no bill of lading is issued the uniform bill on file with the Commission is binding on the parties. *See, e.g.,* Charles J. Webb Sons Co., Inc. v. Central R. Co., 28 F.2d 392 (S.D.N.Y.1928), aff'd 36 F.2d 702 (2d Cir. 1929).

The question for decision, therefore, is whether the Intercoastal Shipping Act, as amended, should be construed in the same fashion as the Interstate Commerce Act to bind the City of Nome to the limitation period contained in the standard bill of lading on file with the Commission in the absence of actual notice.

### III.

■ The purpose of the 1958 amendment to 46 U.S.C.A. § 844 was to simplify billing procedures for carriers in the non-contiguous trade by permitting them to issue a short form bill of lading incorporating the provisions of a standard form on file with the Commission. 3 U.S.Code Cong. & Admin.News, p. 4091 (1958). Initially, the filing was to be permissive, but the wording was changed at the suggestion of the Secretary of Commerce to simplify adminis-

tration. 3 U.S.Code Cong. & Admin. News, p. 4093 (1958).[6]

It was assumed by Congress that accepted billing procedures in 1958 required the issuance of a long form bill of lading in order to consummate an effective contract of carriage. 3 U.S.Code Cong. & Admin.News pp. 4091-4092 (1958). The short form bill was designed to provide "legal protection equal to that obtainable under the present [prior to 1958] system." 3 U.S.Code Cong. & Admin.News, p. 4092 (1958). In order to preserve the notice provided by the long form bill of lading Congress provided that the short form bill had to *actually* be issued and that the long form had to be available upon request and conspicuously posted on each vessel.[7] Even with these safeguards Congress, at the suggestion of the Secretary of Commerce, changed the language of the amendment so that actual issuance of the short form is not "conclusive" proof of notice, but is merely "deemed" to give notice of the standard bill.[8]

■ In enacting the 1958 amendment to 46 U.S.C.A. § 844 Congress expressly stated that the limited relief granted to carriers was not intended to change the basic rights and obligations of the parties to a maritime shipping contract. 3 U.S.Code Cong. & Admin.News, p. 4092 (1958). Under the established precedent of this circuit prior to the amendment, carriers were obliged to give consignees actual notice of all contract provisions other than those relating to rates and services, which by law

---

**6.** The Secretary concluded that this was consistent with the Commission's control over bill of lading provisions which *"in anywise change, affect or determine any part of the aggregate of the rates, fares, charges, or the value of the service."* 3 U.S.Code Cong. & Admin.News, p. 4093 (1958) (emphasis added).

**7.** *See supra* note 3.

**8.** The bill as originally drafted provided that issuance of the short form bill was

conclusive proof of notice. Noting that "This provision appears to extend the liability of shippers and passengers beyond that now accepted with use of a long form document," the Secretary pointed out that under then existing law actual notice was a question of fact. He recommended that the word "conclusive" be struck out "in order to maintain the existing liabilities when using a short-form in place of a long-form document." 3 U.S.Code Cong. & Admin. News, p. 4094 (1958).

cannot be varied.[9]  Pacific Steamship Co. v. Cackette, *supra*.  The amendment, therefore, in no way vitiates the duty of the carrier to give actual notice of provisions other than those which relate to rates, fares and charges for or in connection with transportation.  Port of Tacoma v. Duval, supra.

Since the one year limitation of actions provision found in the Alaska Steamship standard bill of lading on file with the Federal Maritime Board does not relate to "rates, fares and charges for or in connection with transportation," plaintiff was not bound thereby in the absence of actual notice.  The motion for summary judgment is accordingly denied.

---

9.  46 U.S.C.A. § 844 (Supp.1970).  The 1958 amendment changed only the first paragraph of § 844.  Thus, while it is still unlawful to deviate from published rates, other contract provisions may presumably be varied by agreement of the parties.