**PUERTO RICO MARINE MANAGE-MENT, INC., Plaintiff,**

v.

**KEN PENN AMUSEMENT, INC., Defendant.**

**Civ. A. No. 82–2060.**

United States District Court, W.D. Pennsylvania.

Nov. 4, 1983.

Apple & Apple, Pittsburgh, Pa., Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for plaintiff.

K. Lawrence Kemp, New Kensington, Pa., for defendant.

## MEMORANDUM OPINION

WEBER, District Judge.

The plaintiff, Puerto Rico Marine Management, Inc. (hereinafter "PRMSA"), is a

carrier of merchandise by water for hire. The defendant, Ken Penn Amusement, Inc. (hereinafter "Ken Penn"), is the owner of certain carnival equipment transported by PRMSA between various continental east coast ports and Puerto Rico in the fall of 1980 and the winter and spring of 1980–81. The shipments were made pursuant to some thirty or more bills of lading of standard form supplied by PRMSA and executed by National Expositions, Inc. on behalf of Ken Penn. PRMSA filed this action on September 30, 1982 for the collection of freight monies due on a single shipment made in April 1981 pursuant to bill of lading No. 380–363614. On October 29, 1982, Ken Penn filed an answer and a counterclaim to recover for damage to Ken Penn's cargo carried by water between September, 1980 and April 1981. Plaintiff seeks an order dismissing the counterclaim on the basis of the statute of limitations and granting summary judgment with respect to its claim. Ken Penn has filed a motion for summary judgment with respect to plaintiff's claim for relief.

With respect to Ken Penn's counterclaim, PRMSA contends it is barred by the one year statute of limitations contained in the Carriage of Goods by Sea Act (hereinafter

"COGSA" or "the Act"), 46 U.S.C. § 1300 *et seq.* COGSA, as PRMSA concedes, does not apply *ex proprio vigore* to the carriage of goods between United States ports. The Act specifically regulates the carriage of cargo between ports of the United States and foreign ports. However, the Act and its limitation of actions period may be made to apply when COGSA is incorporated into a bill of lading. Section 1312 of the Act provides, in relevant part:

> Nothing in the chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States and its possessions, and any other port of the United States or its possessions: Provided, however, that any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of the chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter,

The bills of lading under which the goods were shipped by PRMSA contained language incorporating COGSA.[1] The limita-

---

1. PRMSA's short form bill of lading, Clause 2, provided, as follows:
 2. During all other periods, including the time the goods are in the custody of Puerto Rico Maritime Shipping Authority and during the time the goods are loaded on board, carried or discharged from any vessel, and during the time the goods are in the custody of Puerto Rico Maritime Shipping Authority at the port of discharge, and during the time the goods are oncarried or transported or in the custody of Puerto Rico Maritime Shipping Authority, its agents or any independent contractors after discharge and until delivery, this carriage shall be subject to the terms and conditions of the Puerto Rico Maritime Shipping Authority's regular long form bill of lading contract. All parties to this contract are bound by the terms, provisions, stipulations and conditions of Puerto Rico Maritime Shipping Authority's regular long form bill of lading and published tariff which is on file with the Federal Maritime Commission, posted on board each vessel and open for shippers' or other parties' inspection at the company's offices, and the same are hereby incorporated with the same force and effect for all purposes as if it were severally, fully and specifi-

cally set forth herein. Where applicable, this bill of lading is subject to Public Law 85–810, Stat. 977, approved August 28, 1958. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 26, (sic) 1936.
 Its long form bill of lading, Clause I, provided, as follows:
 When this Bill of Lading governs, it is subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which are incorporated herein, and nothing herein contained is a surrender by the carrier of any of its rights, immunities or limitations or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent but no further.
 The Carrier shall be entitled to avail itself of all rights, limitations, exemptions and immunities provided for in said Carriage of Goods by Sea Act, although the contract of carriage evidenced by this Bill of Lading may be for the carriage of goods between ports of the United States.

tion of actions provision of the Act thereby incorporated is found at Section 1303(6) and provides as follows:

In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered. 46 U.S.C. § 1303(6).

More than one year after the date of shipment of the allegedly damaged goods Ken Penn filed its counterclaim. Based on Section 1303(6), PRMSA contends that the counterclaim is time-barred.

■ In response, Ken Penn first submits that PRMSA is estopped from asserting the Statute of Limitations because PRMSA led Ken Penn to believe that the claim for damages which is the subject of the counterclaim would be settled extrajudicially. We find this contention unsupported by the record. Ken Penn asserts that certain agents of PRMSA indicated that time was not a problem in the resolution of the damage claim. Ken Penn fails to identify the PRMSA agents; it has failed to demonstrate that it relied upon any of PRMSA's alleged representations; and PRMSA has provided uncontroverted evidence from its representatives, by way of affidavit, that no such representations were made. Furthermore, no active settlement negotiations were undertaken by the parties and it appears that the period of Ken Penn's inactivity was longer than the period of the stat-

ute. *Cf. Michelena & Co. v. American Export Isbrandtsen Lines, Inc.,* 258 F.Supp. 479 (D.P.R.1966) (settlement negotiations carried on for more than a year). Ken Penn has failed to provide evidence to demonstrate that a factual issue exists as to whether PRMSA acted to induce Ken Penn not to institute suit within the period of the statute. *Cf. Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

■ Ken Penn next submits that because it was not a party to the freight contract executed by PRMSA and National Exposition, Inc., the COGSA statute of limitation incorporated by the language of the bill of lading does not apply to defendant's counterclaim. Clearly, a contract cannot impose obligations upon one who is not a party to the contract. *Allen Organ Co. v. North American Rockwell Corp.,* 363 F.Supp. 1117 (D.Pa.1973).

■ The Intercoastal Shipping Act, 46 U.S.C. § 843 et seq. requires that any common carrier by water in intercoastal commerce must file a tariff with the Federal Maritime Commission (hereinafter "Commission") which includes the terms and conditions of any bill of lading. The Act provides that when the filing is incorporated by reference in a short form document then every person having an interest in such transportation is deemed to have notice of the contents of the filing.[2]

2. Section 844 provides in part:

Schedule of rates; filing; posting; availability; incorporation by reference in short form documents; penalties for violations:

Every common carrier by water in intercoastal commerce shall file with the Federal Maritime Commission and keep open to public inspection schedules showing all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route; and, if a through route has been established, all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route and points on the route of any other carrier by water. The schedules filed, and kept open to public inspection as aforesaid by any such carrier shall plainly show the places between which passengers and/or freight will

be carried, and shall contain the classification of freight and of passenger accommodations in force, and shall also state separately each terminal or other charge, privilege, or facility, granted or allowed, and any rules or regulations which in anywise change, affect, or determine any part of the aggregate of such aforesaid rates, fares, or charges, or the value of the service rendered to the passenger consignor, or consignee, and shall include the terms and conditions of any passenger ticket, bill of lading, contract of affreightment, or other document evidencing the transportation agreement. The terms and conditions as filed with the Federal Maritime Commission shall be framed under glass and posted in a conspicuous place on board each vessel where they may be seen by passengers and others at all times. Such carriers in establishing and fixing rates, fares or charges may make equal

These recorded tariff provisions have been held binding on the carrier and the shipper. *See, Lowden v. Simonds-Shields-Lonsdale Grain Co.,* 306 U.S. 516, 59 S.Ct. 612, 83 L.Ed. 953 (1939). When a tariff is filed with the Federal Maritime Commission, the public at large is placed on constructive notice of the contents thereof. *Port of Tacoma v. S.S. Duval,* 364 F.2d 615 (9th Cir.1966); *United States v. Central Gulf Steamship Corp.,* 340 F.Supp. 473 (E.D.La.1972), vacated on other grounds, 517 F.2d 687 (5th Cir.1975). PRMSA, therefore, submits that Ken Penn had notice of the one year statute of limitations provision.

 Section 844 was intended to simplify billing procedures for carriers in the non-contiguous trade by permitting them to issue a short form bill of lading incorporating the provisions of a standard form on file with the Commission. In enacting the Section Congress intended that the relief granted to carriers was not to change the basic rights and obligations of the parties to a maritime shipping contract. See 3 U.S.Code Cong. & Admin.News pp. 4091–92 (1958). Prior to its enactment carriers were obliged to provide consignees actual notice of all contract provisions other than those relating to rates and services. The Act served the requirement of notice as to

"rates, fares, and charges" but the carrier still must give notice as to all other matters. PRMSA has provided no authority indicating that a limitation of action provision lends itself to the constructive notice provision of 46 U.S.C. § 844. The Court in *City of Nome v. Alaska Steamship Company,* held that the one year limitation of actions provision found in a standard bill of lading on file with the Federal Maritime Board did not relate to "rates, fares and charges for or in connection with transportation," as set forth in Section 844. 321 F.Supp. 1063, 1067 (D.Ala.1971). The Court concluded that the consignee was not bound by this provision in the absence of actual notice. We conclude that Ken Penn cannot be obligated by the limitation of actions provision of COGSA incorporated into PRMSA's standard bill of lading pursuant to 46 U.S.C. § 1312 on file with the Commission pursuant to 46 U.S.C. § 844 in the absence of actual notice. PRMSA's motion for summary judgment with respect to Ken Penn's counter-claim must be denied.

 We must turn to a consideration of the cross-motions for summary judgment with respect to PRMSA's claim for freight payment. A stipulation between the parties was read into the record and provides

rates, fares or charges for similar service between all ports of origin and all ports of destination, and it shall be unlawful for any such carrier, either directly or indirectly, through the medium of any agreement, conference, association, understanding, or otherwise to prevent or attempt to prevent any such carrier from extending service to any publicly owned terminal located on any improvement project authorized by the Congress at the same rates which it charges at its nearest regular port of call. Such schedule shall be plainly printed, and copies shall be kept posted in a public and conspicuous place at every wharf, dock, and office of such carrier where passengers or freight are received for transportation, in such manner that they shall be readily accessible to the public and can be conveniently inspected. In the event that any such schedule includes the terms and conditions of any passenger ticket, bill of lading, contract of affreightment or other document evidencing the transportation agreement, as herein provided, copies of such terms and

conditions shall be made available to any shipper, consignee, or passenger upon request. Such terms and conditions, if filed as permitted by this section and framed under glass and posted in a conspicuous place on board each vessel where they may be seen by passengers and others at all times, may be incorporated by references in a short form of same actually issued for the transportation or in a dock receipt or other document issued in connection therewith, by notice printed on the back of each document that all parties to the contract are bound by the terms and conditions as filed with the Federal Maritime Commission and posted on board each vessel, and when so incorporated by reference every carrier and any other person having any interest or duty in respect of such transportation shall be deemed to have such notice thereof as if all such terms and conditions had been set forth in the short form document.

* * * * * *

the evidentiary basis for any entitlement to, and the amount of, the freight charges. The parties agreed (a) that the freight in question had been moved between the ports in question on the dates indicated in the bill of lading and (b) that the freight has not been paid. PRMSA proves, by way of affidavit, that the amount to be charged was $1,387.88 based on the rate pursuant to the tariff; on a supplemental increase for shipments between Baltimore and Puerto Rico; and on wharfage fees. We note that even in the face of an allegation of damaged or destroyed cargo, the duty to pay freight is not discharged. *Compagnia di Navigazione Mauritius Rome v. Kulukundis*, 182 F.Supp. 258 (E.D.N.Y.1959), *aff'd* 277 F.2d 161 (2d Cir.1960).

 PRMSA contends that Ken Penn as the consignee of the bill of lading is liable under the contract of carriage for the payment of the freight. PRMSA points out that the bill of lading was clearly marked "freight to be collected", and not "freight prepaid." PRMSA's long form bill of lading provides, in relevant part, as follows:

18 FREIGHT, LIENS, QUANTITY...

Full freight to the port of discharge named herein and all advance charges against the goods shall be considered completely earned on receipt of the goods by the carrier, whether the freight or charges be prepaid or stated or intended to be prepaid or to be collected at the port of discharge or destination or subsequently ...

The shipper and consignee and owner of the goods shall be jointly and severally liable to the carrier for the payment of all freight, charges and any amounts due the carrier...

Again the conditions of the long form bill of lading are incorporated in the short form bill of lading. As such the conditions of the bill of lading are subject to the presumption of notice provisions previously discussed and contained in 46 U.S.C. § 844. Consequently, Ken Penn's rejoinder that it is not a party to the contract of carriage and thus not liable for the payment of freight is without merit. It is severally

liable in freight charges as set forth on the long form bill of lading filed with the Commission and had notice under Section 844. *Compare, Alcoa S.S. Co. v. United States*, 338 U.S. 421, 70 S.Ct. 190, 94 L.Ed. 225 (1946) (liability provisions of bill of lading are valid conditions of affreightment) *with Chadbourne-Caribbean Industries v. Autoridad de las Navieras de Puerto Rico*, 428 F.Supp. 493 (D.P.P.1977) (tariff filed with Commission gave public notice of contents) *and City of Nome, supra*, 321 F.Supp. 1063 (notice applies only to "rates, fares and charges for or in connection with transportation...").

In accordance with the foregoing we will order that summary judgment be entered in favor of PRMSA in the amount of $1,387.88.