**INSURANCE COMPANY OF NORTH AMERICA, et al., Plaintiffs, Appellants,**

v.

**PUERTO RICO MARINE MANAGEMENT, INC., Defendant, Appellee.**

No. 85–1072.

United States Court of Appeals, First Circuit.

Heard May 10, 1985.

Decided July 26, 1985.

Robert W. Fenet, Lake Charles, La., with whom Woodley, Barnett, Cox, Williams, Fenet & Palmer, Lake Charles, La., James A. Toro and Chavier-Stevenson & Toro, San Juan, P.R., were on brief for appellants.

J. Ramon Rivera-Morales, Hato Rey, P.R., with whom Jimenez & Fuste, Hato Rey, P.R., was on brief for appellee.

Before CAMPBELL, Chief Judge, VAN DUSEN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

VAN DUSEN, Senior Circuit Judge.

Plaintiff, Insurance Company of North America (INA),[1] which insured a consignee against the loss of a certain shipment of goods, brought suit against defendant, Puerto Rico Marine Management, Inc. (PRMMI), the sea carrier of those goods. Plaintiff alleged that defendant acted negligently by delivering the goods to an imposter who claimed to represent the consignee, rather than delivering them to the actual consignee. The defendant moved for summary judgment, contending that plaintiff's suit was time-barred by a one-year limitations provision contained in the bill of lading covering this shipment. Plaintiff opposed the motion, arguing that a one-year limitations period did not govern the action. The district court granted defendant's motion for summary judgment,

---

* Of the Third Circuit, sitting by designation.

1. Plaintiff, the Insurance Company of North America, is suing as a representative of, and on behalf of, thirty-two insurance companies subscribing to Lloyds' policy of marine insurance.

concluding that plaintiff's suit was time-barred.

Plaintiff now appeals the judgment of the district court. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982). We will affirm for the reasons stated in this opinion.

## I. Factual History [2]

In December 1981, the Canadian Saltfish Corporation entered into a shipping agreement with defendant-carrier, PRMMI, to ship a load of 800 cartons of dry salt codfish to the consignee, Mendez & Company, Inc. PRMMI accepted the cargo for shipment at Elizabeth, New Jersey. The agreement provided that the cargo would be shipped to San Juan, Puerto Rico, where it was to be picked up by the consignee. A bill of lading covering the shipment was issued by PRMMI.

The cargo arrived at the port of San Juan on January 2, 1982. Upon the arrival of the goods, PRMMI unloaded the goods from its ship and held them in its storage facilities for safekeeping. On January 4, 1982, PRMMI delivered the goods to someone who arrived at its facilities purporting to represent the consignee. Later that day, an actual representative of the consignee came to PRMMI's storage facilities to obtain the goods, at which time he was informed by PRMMI officials that the goods had been delivered to another person. The next day, January 5, 1982, PRMMI was informed by the police department that the trailer that had contained the goods in question had been found empty and abandoned.

At the request of PRMMI, the police department then notified the consignee of its discovery. The consignee maintained that it had never taken delivery of the lost goods and asked PRMMI for reimbursement for their loss. PRMMI refused, as-serting that it had delivered the goods to a person presenting the proper documents necessary to obtain them. As a result, the consignee filed a claim for compensation for the lost goods with plaintiff, its insurer. Plaintiff paid the claim.

On December 1, 1983, plaintiff filed this subrogation action in its own name against PRMMI in the United States District Court for the District of Puerto Rico. Service of process was not effected on PRMMI until March 19, 1984. The complaint made two claims: (1) that PRMMI had breached a maritime contract to protect the consignee's goods, and (2) that PRMMI was negligent in its care of those goods.

On August 21, 1984, PRMMI filed a motion for summary judgment. PRMMI contended that plaintiff's action failed to state a claim because it was not instituted within one year of the date the claim arose, as was required under the limitations provisions contained in the bill of lading which governed the shipment. On December 6, 1984, the district court granted PRMMI's summary judgment motion, agreeing that the action was time barred. *See Ins. Co. of North Am. v. Puerto Rico Marine Mgmt.*, 599 F.Supp. 199, 204 (D.P.R.1984). Plaintiff now appeals the judgment of the district court.

## II. Discussion

In granting defendant's motion for summary judgment, the district court ruled that plaintiff's action was time-barred because it was filed more than one year after the date delivery of the goods to the consignee was due. The district court concluded that the action was governed by the one-year limitations period specified in defendant's long-form bill of lading, which had been placed on public file with the Federal Maritime Commission (FMC). The

---

2. The facts recited herein are based on the district court's purported "Findings of Fact." *See Ins. Co. of North Am. v. Puerto Rico Marine Mgmt.*, 599 F.Supp. 199, 201 (D.P.R.1984).

The court's characterization of the facts of the case as "findings of fact" implies that the court resolved disputed factual issues pursuant to Fed. R.Civ.P. 52. Yet, the district court granted de-fendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56, which is proper only if there is no genuine issue as to any material fact. Because the parties did not dispute any material facts in this case, we will treat the court's "Findings of Fact" as merely a statement of undisputed facts, which is not subject to review by this court.

court reasoned that, because the short-form bill of lading—which defendant issued for this specific shipment—expressly incorporated the terms of the long-form bill of lading, the limitations provision contained in the long-form bill of lading controlled. Plaintiff contends that the district court erred because, as a matter of law, insurers of consignees are not bound by limitations provisions contained in long-form bills of lading filed with the FMC, absent actual notice of such provisions.

■ We first observe that, because this case is a subrogation action, plaintiff, an insurer, has no greater or lesser rights than those of its insured, the consignee (Mendez & Co.). *See United States v. Munsey Trust Co.*, 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947); *First National City Bank v. United States*, 548 F.2d 928, 936 (Ct.Cl.1977); *Aaacon Auto Transport v. State Farm Mut. Auto Ins.*, 537 F.2d 648, 651–52 (2d Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). Thus, in deciding what limitations provision applies to plaintiff in this action, we must determine what limitations period would have governed a suit against defendant brought by the consignee in its own right.

■ Generally, for shipments between ports of the United States and its possessions, there is no specific limitations period for suits by a consignee against a carrier. The Harter Act, 46 U.S.C. §§ 190–196 (1982), which governs such shipments, merely prohibits a carrier from releasing itself completely from liability for its negligence. *See* 46 U.S.C. § 190 (1982). Carriers may, however, impose a limitations period on all claims against them for negli-

gence, without violating the Act, so long as the time period specified is reasonable. *See The Queen of the Pacific*, 180 U.S. 49, 53–58, 21 S.Ct. 278, 279–82, 45 L.Ed. 419 (1901); *J. Aron & Co. v. Askvin*, 267 F.2d 276, 278 (2d Cir.1959); *Zifferer v. Atlantic Lines, Ltd.*, 278 F.Supp. 736, 739 (D.P.R. 1968).

■ On the other hand, for shipments between the United States and foreign ports, the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315, specifically provides a one-year limitations period for claims against a carrier for negligence. The Act states:

> "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."

46 U.S.C. § 1303(6) (1982). COGSA does not apply by its own terms to shipments, such as the one in this case, which transfer goods between ports of the United States and its possessions. 46 U.S.C. § 1312 (1982). Nevertheless, COGSA can apply if the bill of lading covering such shipments contains an express statement that the provisions of COGSA govern.[3]

In this case, plaintiff maintains that its claim is governed by the Harter Act, and therefore it was not required to file suit within any particular time period. Plaintiff asserts that, as long as its suit was filed within a reasonable time, the suit was not time-barred. By contrast, defendant claims that the bill of lading covering the shipment in question specifically stated that the provisions of COGSA—including COGSA's

---

**3.** Section 1312 provides in relevant part:

"This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade. As used in this chapter the term 'United States' includes its districts, territories, and possessions. The term 'foreign trade' means the transportation of goods between the ports of the United States and ports of foreign countries. Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its posses-

sions, and any other port of the United States or its possessions: *Provided, however,* That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter: . . . ."

46 U.S.C. § 1312 (1982).

one-year limitations provision—govern this shipment.

The bill of lading for the shipment in this case actually consists of two parts: a short-form bill of lading and a long-form bill of lading. The short-form bill of lading is a document issued by defendant that lists the particular specifications of the cargo (contents, weight, etc.) in the shipment. The long-form bill of lading is a document issued by defendant which lists the rates, fares, and charges, as well as terms and conditions pertaining to all of defendant's shipments. The long-form bill of lading is placed on public file with the Federal Maritime Commission pursuant to 46 U.S.C. § 844.[4] Section 844 provides that a carrier, such as defendant, may give notice of the terms and conditions contained in a long-form bill of lading to all parties in interest—and thereby bind them to these terms and conditions—by incorporating by reference these terms and conditions into a short-form bill of lading.[5]

■ The defendant's short-form bill of lading for this shipment incorporated by reference all the terms and conditions of its long-form bill of lading. The short-form bill of lading specifically stated that the long-form bill of lading governed at all times during which the goods were in the custody of the defendant or its agents.[6]

The claim at issue in this case arose after the goods were unloaded from defendant's ship at the San Juan port, but while the goods were still in defendant's custody.

---

4. Section 844 states:

"§ 844. Schedule of rates; filing; posting; availability; incorporation by reference in short form documents; penalties for violations

"Every common carrier by water in intercoastal commerce shall file with the Federal Maritime Commission and keep open to public inspection schedules showing all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route; and, if a through route has been established, all the rates, fares, and charges for or in connection with transportation between intercoastal points on its own route and points on the route of any other carrier by water. The schedules filed, and kept open to public inspection as aforesaid by any such carrier ... shall include the terms and conditions of any passenger ticket, bill of lading, contract of affreightment, or other document evidencing the transportation agreement."

46 U.S.C. § 844 (1982).

5. The requirements of such incorporation by reference are as follows:

"Such terms and conditions, if filed as permitted by this section and framed under glass and posted in a conspicuous place on board each vessel where they may be seen by passengers and others at all times, may be incorporated by reference in a short form of same actually issued for the transportation, or in a dock receipt or other document issued in connection therewith, by notice printed on the back of each document that all parties to the contract are bound by the terms and conditions as filed with the Federal Maritime Commission and posted on board each vessel, and when so incorporated by reference every carrier and any other person having any interest or duty in respect of such transportation shall be deemed to have such notice thereof as if all such terms and conditions had been set forth in the short form document."

46 U.S.C. § 844 (1982).

The defendants in this case satisfied section 844's requirements of incorporation. Paragraph 2 of the section in defendant's short-form bill of lading entitled "Contract and Terms and Conditions" stated explicitly:

"All parties to this contract are bound by the terms, provisions, stipulations and conditions of Puerto Rico Maritime Shipping Authority's regular long form bill of lading and published tariff which is on file with the Federal Maritime Commission, posted on board each vessel and open for shippers' or other parties' inspection at the company's offices, and the same are hereby incorporated with the same force and effect for all purposes as if it were severally, fully and specifically set forth herein...."

6. The short-form bill of lading provided:

"2. During all other periods, including the time the goods are in the custody of Puerto Rico Maritime Shipping Authority and during the time the goods are loaded on board, carried or discharged from any vessel, and during the time the goods are in the custody of Puerto Rico Maritime Shipping Authority at the port of discharge, and during the time the goods are oncarried or transported or in the custody of Puerto Rico Maritime Shipping Authority, its agents or any independent contractors after discharge and until delivery, this carriage shall be subject to the terms and conditions of the Puerto Rico Maritime Shipping Authority's regular long form bill of lading contract...."

Thus, defendant argues that the limitations provisions in the long-form bill of lading govern this action.

The long-form bill of lading provides for a one-year limitations period in two different places. Item number 1 of the Terms and Conditions section states that the long-form bill of lading is in effect while goods being shipped are in defendant's custody and that, when it is in effect, it is subject to the provisions of COGSA.[7] In essence, this item provides that COGSA's one-year limitations period applies at any time in which defendant has custody of the goods. Although COGSA does not apply by its own terms during the time in which a carrier has custody of goods after the goods have been unloaded from the ship,[8] the Act provides that the parties to a shipping contract may agree to extend the Act's coverage to the period before loading or after unloading of the goods. 46 U.S.C. § 1307 (1982); *see Miller Export Corp. v. Hellenic Lines*, 534 F.Supp. 707, 710 (D.C.N.Y.1982); *Mediterranean Marine Lines v. John T. Clark & Sons*, 485 F.Supp. 1330, 1337 (D.Md. 1980); *Zifferer v. Atlantic Lines Ltd.*, 278 F.Supp. 736, 739 (D.P.R.1968).

In addition to its paragraph which states that the provisions of COGSA govern while defendant has custody of the goods, the long-form bill of lading contains a paragraph that specifically provides for a one-year limitations period for all claims against the carrier for loss of goods. Item number 23 of the Terms and Conditions section provides in part:

"In any event, the carrier and the ship shall be discharged from all liability for any loss of, or damage to, or delay of the goods or with respect to freight, charges or expenses, or the refund thereof or any other claim of whatsoever description, unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered. Suit shall not be deemed brought against the carrier or ship until jurisdiction shall have been obtained of the carrier or the ship, or both, or if brought in admiralty, unless process or written notice of the filing of a libel shall have been served or delivered to the carrier."

Thus, the long-form bill of lading clearly provides for a one-year limitations period to apply to a claim, such as the one in this case, in which the goods were lost after they were unloaded from the carrier's ship but while they were still in the carrier's possession. The only question for this court to decide is whether the consignee, and correspondingly its insurer, is bound by the limitations provisions contained in the long-form bill of lading. Plaintiff maintains that it is not bound by any provisions of defendant's long-form bill of lading—ex-

---

**7.** Defendant's long-form bill of lading provides:
"TERMS AND CONDITIONS OF REGULAR LONG FORM OF BILL OF LADING
   "1. COVERAGE. This Bill of Lading shall have effect while the containers, goods and packages are in the custody of the vessel or Puerto Rico Maritime Shipping Authority, its agents, its servants and its independent contractors.... When this Bill of Lading governs, it is subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which are incorporated herein, and nothing herein contained is a surrender by the carrier of any of its rights, immunities or limitations or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent but no further.
   "The carrier shall be entitled to avail itself of all rights, limitations, exemptions and im-

munities provided for in said Carriage of Goods by Sea Act, although the contract of carriage evidenced by this Bill of Lading may be for the carriage of goods between ports of the United States."

**8.** Section 1311 of COGSA provides:
"§ 1311. Liabilities before loading and after discharge; effect on other laws
   "Nothing in this chapter shall be construed as superseding any part of sections 190 to 196 of this title, or of any other law which would be applicable in the absence of this chapter, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship."
46 U.S.C. § 1311 (1982). The phrase "sections 190 to 196 of this title" refers to the Harter Act, 46 U.S.C. §§ 190–196 (1982).

cept those relating to rates, fares, and charges—because it did not have actual notice of those provisions. We disagree.

The language and legislative history of the Shipping Act of 1916, the Intercoastal Shipping Act of 1933, and its 1958 amendments [9] indicate that Congress intended that consignees could be bound by the terms and conditions of carriage which are included in schedules that a carrier places on file with the Federal Maritime Commission pursuant to 46 U.S.C. § 844. The language of section 844 that was added to the Intercoastal Shipping Act of 1933 by amendment in 1958 states clearly that terms and conditions of a contract for carriage of goods, rather than just rates, fares, and charges, can be incorporated by reference into a short-form bill of lading and bind all parties in interest:

> "Such terms and conditions, if filed as permitted by this section ..., may be incorporated by reference in a short form of same actually issued for the transportation, or in a dock receipt or other document issued in connection therewith, by notice printed on the back of each document that all parties to the contract are bound by the terms and conditions as filed with the Federal Maritime Commission and posted on board each vessel, and when so incorporated by reference every carrier and any other person having any interest or duty in respect of such transportation shall be deemed to have such notice thereof as if all such terms and conditions had been set forth in the short form document."

46 U.S.C. § 844 (1982).

The legislative history of the 1958 amendments indicates that the purpose of including the terms and conditions of carriage within long-form bills of lading filed with the FMC was to alleviate a carrier's burden of reproducing the lengthy list of terms and conditions on every bill of lading it issued for its shipments. By placing notice on the short-form bill of lading issued for each shipment that all parties are bound by the terms and conditions listed on the long-form bill of lading, the carrier would be in the same legal position vis-a-vis other parties in interest, including consignees, as if it had listed these terms and conditions in each short-form bill of lading.[10]

9. The Shipping Act, 1916, Pub.L. No. 64–260, 39 Stat. 728 (1916), required carriers involved in intercoastal commerce to file with the United States Shipping Board (now the Federal Maritime Commission) all rates, fees, and charges in connection with transportation.

The Intercoastal Shipping Act, 1933, Pub.L. No. 72–415, 47 Stat. 1425 (1933), amended the Shipping Act of 1916 by requiring a carrier to file a fixed-rate schedule. Rates under the amendment were not permitted to be changed unless a new schedule was filed at least thirty days prior to the change. The intended purpose of the amendment was to prevent secret rebates and price cutting schemes to favored shippers.

The Intercoastal Shipping Act, 1958, Pub.L. No. 85–810, 72 Stat. 977 (1958), amended Intercoastal Shipping Act of 1933 by allowing a carrier to issue a short-form bill of lading that could incorporate by reference a long-form bill of lading on file with the Federal Maritime Board (now the Federal Maritime Commission). See 46 U.S.C. § 844 (1982).

10. The Senate Report described the need for the 1958 amendments in the following manner:

"This bill would offer relief to ocean common carriers in the noncontiguous trades (Hawaii, Alaska, and Puerto Rico) from the necessity of including on the reverse side of bills of lading, passenger tickets, dock receipts, and other transportation documents the specific terms under which passengers or cargoes are carried. Inclusion of all of such terms and conditions makes the transportation documents cumbersome, lengthy, and costly, and creates problems in storage and processing them for issuance.

"If adopted, all ocean carriers subject to the Intercoastal Shipping Act, 1933, could eliminate the presently archaic system of printing the entire bill of lading contract and passenger contract in the transportation document. In lieu of the long form, the carrier could issue less costly short forms which could be reproduced through modern mechanical techniques. When carriers issued such short form transportation documents, they would have legal protection equal to that obtainable under the present system. Moreover, the rights and obligations of shippers, consignees, passengers, and others having any interest or duty in the transportation furnished by such carriers would not be altered."

S.Rep. No. 2144, 85th Cong., 2d Sess. 2, *reprinted in* 1958 U.S.Code Cong. & Ad.News 4091.

Further support for the proposition that consignees are bound by all the incorporated terms and conditions contained within a long-form bill of lading filed with the FMC pursuant to section 844 is found by reviewing a similar practice for carriers governed by the Interstate Commerce Commission. Under the Interstate Commerce Act, consignees are bound by the terms and conditions, including limitations provisions, that are contained in bills of lading on file with the Interstate Commerce Commission and are incorporated by reference into short-form bills of lading.[11] The legislative history of the original Shipping Act of 1916 indicates that this Act was to be administered and interpreted in the same manner as was the Interstate Commerce Act. *See* H.R.Rep. No. 659, 64th Cong., 1st Sess. 32 (1916); S.Rep. No. 689, 64th Cong., 1st Sess. 12 (1916). Subsequent judicial decisions have confirmed this proposition. As the Supreme Court has stated:

> "... we cannot escape the conclusion that Congress intended that the two acts, each in its own field, should have like interpretation, application and effect. It follows that the settled construction in respect of the earlier act must be applied to the later one, unless, in particular instances, there be something peculiar in the question under consideration, or dissimilarity in the terms of the act relating thereto, requiring a different conclusion."

*U.S. Nav. Co. v. Cunard S.S. Co.*, 284 U.S. 474, 481, 52 S.Ct. 247, 249, 76 L.Ed. 408 (1932) (quoted in *Inter-Island Co. v. Hawaii*, 305 U.S. 306, 312 n. 9, 59 S.Ct. 202, 205 n. 9, 83 L.Ed. 189 (1938), and quoted in part in *Maritime Service v. Sweet Broker-age De Puerto Rico*, 537 F.2d 560, 562 (1st Cir.1976) ).

The legislative history of the 1958 amendments does not indicate that schedules of terms and conditions filed with the FMC pursuant to section 844 should have a legal effect different than that of similar schedules filed with the Interstate Commerce Commission. Thus, it is likely Congress intended that schedules filed pursuant to section 844 and incorporated by reference into short-form bills of lading would give constructive notice to, and therefore bind, consignees.

In support of its contention that it should not be bound by terms and conditions in defendant's long-form bill of lading absent actual notice, plaintiff relies principally on two judicial decisions: *Allstate Ins. Co. v. International Shipping Corp.*, 703 F.2d 497 (11th Cir.1983), and *Puerto Rico Marine Mgmt. v. Ken Penn Amusement*, 574 F.Supp. 563 (W.D.Pa.1983). We find both to be unpersuasive in resolving the issue presented in this case.

The facts in *Allstate* were similar to those in this case. The plaintiff, Allstate Insurance Corp., an insurer of a shipper of goods, sued the carrier to recover for damage done to the goods while they were in the carrier's custody. The suit was filed more than one year after the cause of action arose. The carrier asserted that the suit was barred by a one-year limitations provision that was included in its long-form bill of lading, the provisions of which had been properly incorporated by reference into the short-form bill of lading covering the shipment. Nevertheless, the district court awarded judgment to Allstate. The United States Court of Appeals for the Eleventh Circuit affirmed, reasoning that

---

**11.** *See Southern Ry. v. Prescott*, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836 (1916) (consignee bound by incorporated terms of a bill of lading concerning property not removed within a specified period of time after notice of arrival is given); *Sankyo Seiki (America) v. S.S. Korean Leader*, 556 F.Supp. 337 (S.D.N.Y.1982) (non-party bound by a limitations provision that was incorporated by reference into a short-form bill of lading); *American Chicle Div., Warner Lambert v. M/V Mayaguez*, 540 F.Supp. 166 (S.D.Tex. 1981) (indemnity suit by initial carrier against connecting carrier was barred by limitations provision that was incorporated by reference into initial carrier's bill of lading); *Sydnor and Hundley v. Wilson Trucking Corp.*, 213 Va. 704, 194 S.E.2d 733 (1973) (consignee bound by a limitations provision included in a long-form bill of lading on file with the ICC and incorporated by reference into the short-form bill of lading).

limitations provisions in long-form bills of lading filed with the FMC by a carrier do not bind shippers or their insurers absent actual notice of the provisions. 703 F.2d at 500. The court in *Allstate* based its decision primarily on *Marvirazon Compania, Etc. v. H.J. Baker & Bros.,* 674 F.2d 364 (5th Cir.1982). *Marvirazon,* however, was a decision interpreting the legal effect of provisions in a stevedore's tariff filed with the FMC pursuant to 46 U.S.C. § 814,[12] whereas the filed document in question in *Allstate*—as well as the one in this case—is a carrier's bill of lading filed with the FMC pursuant to 46 U.S.C. § 844. Section 844, unlike section 814, requires all terms and conditions relating to a carrier's contract for carriage to be filed with the FMC. Section 844 explicitly permits a carrier to incorporate these terms and conditions by reference into a short-form bill of lading so as to give constructive notice to all shippers, consignees, and other parties in interest. Section 814, on the other hand, requires the filing only of agreements made between and among associations, groups, or conferences of carriers or other persons subject to the Shipping Act. Section 814 does not concern the filing of terms and conditions of contracts for carriage made between carriers and their customers. Thus, *Allstate* was based on a decision interpreting section 814, which is not applicable to questions concerning the proper interpretation of section 844.

Moreover, *Puerto Rico Marine Mgmt. v. Ken Penn Amusement,* 574 F.Supp. 563 (W.D.Pa.1983), the other decision plaintiff relies on, is based on decisions which either misinterpreted section 844 or simply did not interpret section 844 at all. *Ken Penn* involved a consignee's counterclaim against a carrier—the same carrier involved in this case—for damage to goods occurring while they were in the custody of the carrier.

The carrier asserted that the counterclaim was barred by the one-year limitations provision contained in its long-form bill of lading[13] on file with the FMC and incorporated by reference in the short-form bill of lading covering that shipment. The district court disagreed, holding that the consignee was not bound by this provision absent actual notice. 574 F.Supp. at 567. The court reasoned that a long-form bill of lading which is incorporated by reference gives consignees constructive notice only as to "rates, fares, and charges." *Id.*

The *Ken Penn* decision followed an earlier decision, *City of Nome v. Alaska Steamship Company,* 321 F.Supp. 1063 (D.Alaska 1971), which held a one-year limitations provision not binding against a consignee under circumstances similar to those in *Ken Penn.* Yet, as was the *Allstate* decision, *City of Nome* was based on inapposite judicial authority. *City of Nome* relied on *Pacific Steamship Co. v. Cackette,* 8 F.2d 259 (9th Cir.), *cert. denied,* 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426 (1926), and *Port of Tacoma v. S.S. Duval,* 364 F.2d 615 (9th Cir.1966). The *Pacific Steamship* decision is too old to be relevant in interpreting the effect of filing terms and conditions in a long-form bill of lading pursuant to 46 U.S.C. § 844 because the requirement of such filings was not added to the Intercoastal Shipping Act until 1958. Moreover, *Port of Tacoma* interpreted the effect of a terminal operator's agreement filed with the FMC pursuant to 46 U.S.C. § 814, not a carrier's long-form bill of lading filed pursuant to 46 U.S.C. § 844. Thus, *Port of Tacoma* was not applicable to the question presented in *City of Nome, Ken Penn,* and in this case.

### III. *Conclusion*

■ In summary, we find inapplicable the authority relied on by plaintiff to sup-

---

12. The court in *Marvirazon* stated that a stevedore's tariff that is on file does not give a vessel owner constructive notice of a limitations provision contained therein because such provision is not required to be included in the tariff. 674 F.2d at 366, n. 2.

Although the court indicated that the tariff in question had been filed with the Federal Trade Commission, we believe that the tariff had been filed with the Federal Maritime Commission pursuant to 46 U.S.C. § 814.

13. The long-form bill of lading referred to in *Ken Penn* is presumably the same long-form bill of lading at issue in this case.

port the contention that its claim is not barred by the one-year limitations provisions included in defendant's long-form bill of lading. We conclude that a long-form bill of lading filed with the FMC pursuant to 46 U.S.C. § 844 gives constructive notice to a consignee of all its provisions which are properly incorporated by reference into the short-form bill of lading covering the consignee's shipment of goods. In this case, because plaintiff assumed the same legal position as that of its insured, the consignee, we hold that plaintiff had constructive notice of the one-year limitations provision contained in defendant's long-form bill of lading. Because plaintiff had such notice, its claim in this case was properly time-barred because it did not file suit within one year of the date on which the cause of action arose. Accordingly, the judgment of the district court will be affirmed.